OPINION OF THE COURT
David B. Saxe, J.
While plaintiff Carl De Gregorio, a construction worker and a female co-worker were walking along Madison Avenue holding hands one spring day, they were observed with interest by a CBS-TV camera crew filming a story about *492 romance in New York City. The perceived novelty of these two hard hats walking in romantic linkage apparently triggered the camera crew’s interest in filming the couple.
The plaintiff was quickly approached by a woman from the CBS crew holding a microphone. She told the plaintiff about the photographic survey and asked him whether he wanted to make any comments for the show. Although Mr. De Gregorio may have felt warmly to his hard-hat compatriot, he had less than compassionate thoughts toward the TV crew. He demanded that the film be destroyed, advising the production manager that he was married and that his female co-worker was engaged to be married and that it would not “look good” to have a film of this hand-holding episode shown on TV.
The segment depicting Mr. De Gregorio and his female co-worker appeared on a May 10 and May 11, 1982 CBS-TV news broadcast entitled “Couples in Love in New York”.
The plaintiff then sued CBS alleging invasion of privacy, intentional infliction of emotional distress, prima facie tort and defamation.
CBS claims that since there is no dispute as to any material fact which requires a trial they are entitled to summary judgment because: (1) a photograph or film taken on a public street and used in connection with a news broadcast of public interest is not an invasion of privacy under section 51 of the New York Civil Rights Law, and (2) the report is not false, and therefore cannot be libelous, and (3) plaintiff cannot make out a cause of action for either intentional infliction of severe emotional distress or prima facie tort.
The right to privacy in New York is derived solely from sections 50 and 51 of the New York Civil Rights Law. There is no common-law right of privacy in New York. (Arrington v New York Times Co., 55 NY2d 433, 440, mot for rearg den 57 NY2d 669, cert den 51 USLW 3533.)
Section 51 of the Civil Rights Law states, in pertinent part: “Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained *493 * * * may * * * sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture in such manner as is forbidden or declared to be unlawful * * * the jury, in its discretion, may award exemplary damages.”
When a name or picture is used in connection with an item of news as subject matter of public interest, it does not constitute a use for advertising or trade purposes within the meaning of section 51. (Arrington v New York Times Co., 55 NY2d, at p 440; Gautier v Pro-Football, Inc., 304 NY 354, 359.)
Additionally, the subject matter of the filmed sequence under scrutiny — romance — is of public interest. As stated in Paulsen v Personality Posters (59 Misc 2d 444, 448): “[t]he scope of the subject matter which may be considered of ‘public interest’ or ‘newsworthy’ has been defined in most liberal and far-reaching terms. The privilege of enlightening the public is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general.”
The fact that the plaintiff here shunned publicity will not result in a determination of liability under section 51 as long as the publication was a report on a subject of public interest. (Costlow v Cusimano, 34 AD2d 196; Sidis v F-R Pub. Corp., 113 F2d 806 [CCA2d], cert den 311 US 711; Meeropol v Nizer, 381 F Supp 29 [SDNY], affd in part, revd in part on other grounds 560 F2d 1061 [CA2d], cert den 434 US 1013.) A news documentary, such as the “Report”, which uses films to show people behaving in a “romantic” fashion, in order to explore the prevailing attitudes on this topic is newsworthy.
Additionally, the five-second appearance of plaintiff was merely an “incidental use” and cannot form the basis for liability under sections 50 and 51 of the New York Civil Rights Law. (Delan v CBS, Inc., 91 AD2d 255, 260.) In Delan, the court stated that: “Whether a particular use is incidental is determined through an assessment of the *494 ‘relationship of the references to a particular individual “to the main purpose and subject of the [work in issue]” ’ ”. (91 AD2d, at p 260, citing Ladany v Morrow & Co., 465 F Supp 870, 882 [SONY]; Meeropol v Nizer, 381 F Supp, at p 38.)
In this case, the plaintiff’s appearance lasted for approximately five seconds out of an approximately 10-minute broadcast. He was not identified by name; nor did he speak. I hold that his incidental, minor appearance does not constitute a violation of the civil rights statute under consideration.
Although the entire news broadcast was commercially sponsored, the plaintiff’s picture was not utilized for advertising or trade purposes within the meaning of section 51 of the New York Civil Rights Law utilized for advertising or trade purposes. In Arrington v New York Times Co. (55 NY2d 433, supra), the plaintiff’s photograph was taken and used without his consent on the cover of The New York Times Magazine in connection with an article entitled “The Black Middle Class: Making It”. The Court of Appeals stated that the photograph of the plaintiff was not a use “ ‘for the purposes of trade or advertising within the prohibition of the statute’ ” (55 NY2d, at p 440). The court refused to permit Arrington to “vindicate a personal predelection for greater privacy”, concluding that that “may be part of the price every person must be prepared to pay for a society in which information and opinion flow freely.” (55 NY2d, at p 442.) In this case, plaintiff De Gregorio was filmed in a public place and can have no expectation of privacy in that location. Additionally, it does not matter that CBS may have earned a profit from the broadcast, for that fact does not alter their right to depict matters of public interest. (55 NY2d, at p 440.) It is the newsworthy aspect of the communication which is determinative rather than whether or not it was distributed commercially. And, where the communication is newsworthy, it may not be proscribed by sections 50 and 51 of the Civil Rights Law. Such is the case here. (See Gautier v Pro-Football, Inc., 304 NY, at p 359.)
The plaintiff appears to argue that since he demanded that the film not be used, that this creates a special category of privacy right. But, if his position were to be *495 accepted, the dissemination of unfavorable news by the media might be affected. The Supreme Court has ruled adversely on efforts to impose prior restraints on news media. (New York Times Co. v United States, 403 US 713.) The demand by the plaintiff that the film not be broadcast was correctly rejected.
Section 51 of the Civil Rights Law cannot conflict with the constitutional principles of freedom of the press. (See Time, Inc. v Hill, 385 US 374, 382.) Thus, even if a newsworthy report is false section 51 of the Civil Rights Law is inapplicable unless the report is published with “knowledge of its falsity or in reckless disregard of the truth.” (Time, Inc. v Hill, 385 US, at p 388.) Here, there was no false representation and the constitutional principles preclude any redress for the film clip. CBS is entitled to summary judgment.
The plaintiff’s second and third causes of action are nearly identical to the first. The difference is, however, that in these counts, the plaintiff alleges that CBS intended to harm him. To the extent that these two causes of action can be thought to promote claims other than invasion of privacy, it appears that the second cause of action attempts to plead the intentional infliction of emotional distress, and the third cause of action attempts to plead a prima facie tort.
Specifically, the second cause of action differs from the first in that plaintiff states that the May 11, 1982 broadcast was willful, wanton, and malicious, and that WCBSTV broadcast plaintiff’s picture without any “just cause and provocation”, despite plaintiff’s alleged instructions not to use the film. Accordingly, plaintiff concludes that CBS was charged with a duty to foresee the mental and emotional consequences that would flow from the broadcast and, by violating this so-called duty, caused plaintiff injury. The third cause of action differs from the first and second only with respect to plaintiff’s allegation that defendant’s motives were malevolent and intended to cause plaintiff damage, without excuse or justification.
Simply by adding terms like “malice”, “wanton”, and “willful”, in the second and third causes of action, plaintiff has not changed the nature of his complaint — invasion of *496 privacy and, as stated previously, plaintiff has not and cannot state a cause of action under those sections on the facts existing here.
To the extent that the second cause of action attempts to go beyond invasion of privacy, it appears to allege intentional infliction of emotional distress.
In order to establish a cause of action for intentional infliction of emotional distress under New York law, the plaintiff must show that the defendant’s conduct was so shocking and outrageous as to exceed all reasonable bounds of decency and which intentionally or recklessly causes emotional distress to plaintiff. (Fischer v Maloney, 43 NY2d 553, 557.) In this case, broadcasting a film depicting unnamed couples engaging in romantic conduct on a public street, including five seconds of film footage of the plaintiff, in a news report about romance cannot be said to be unusual conduct transcending the norms tolerated by a decent society. Therefore, the plaintiff has failed to state a cause of action for infliction of severe emotional distress.
To the extent that the third cause of action attempts to go beyond invasion of privacy and intentional infliction of severe emotional distress, for which it would fail along with the first and second causes of action, it appears to allege a prima facie tort.
The elements of a prima facie tort are: (1) the infliction of intentional harm; (2) resulting in damage; (3) without excuse or justification; (4) by an act or series of acts which would otherwise be lawful; and (5) an allegation of special damages. (ATI, Inc. v Ruder & Finn, 42 NY2d 454, 458.)
Here, it is undisputed that at the time the plaintiff was filmed, his identity was unknown to the film crew or anyone else at CBS.
The footage was shot in the ordinary course of business, along with numerous other shots of couples walking down Fifth Avenue holding hands, walking through Central Park holding hands, or embracing in other public places.
Thus, the plaintiff cannot show that CBS specifically intended to cause him harm by broadcasting the report — an element of plaintiff’s prima facie case. CBS intended to broadcast a news report on a matter of public interest in its *497 regular course of business, and this alone is sufficient to defeat plaintiff’s claim.
The fourth cause of action is based upon the same facts as the first three, but here, the plaintiff characterizes the broadcast as libelous in that it falsely portrayed plaintiff and his companion as “hard-hat lovers”. In the fifth and sixth causes of action the plaintiff asserts that the broadcast was libelous per se, since it portrayed plaintiff as an adulterer, “impugns” his chastity, and portrays him as committing a crime of “moral turpitude”.
These libel claims are without merit since the report did not portray the plaintiff falsely (Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, cert den 434 US 969). The plaintiff cannot refute the reality captured by CBS’s photographer.
The plaintiff further alleges however that the report falsely portrayed him as a “hard-hat lover”, having an illicit affair with a co-worker. This is simply not so. Nowhere in the report was it stated that he was having an illicit relationship. The theme of the report concerned romance and the behavior of the plaintiff and his co-worker was consistent with that theme. (See, also, Williams v WCAU-TV, 555 F Supp 198.) With no false portrayal there can be no defamation. Accordingly, the libel claims are dismissed.
To accept the theories offered by the plaintiff would severely restrict the news gathering ability of the press. According to the plaintiff’s theory, a news subject caught by the camera in an unpleasant situation could demand that the picture not be broadcast, in effect, preventing the publication of the news. This, however, is simply not the law. Neither the law of defamation nor the law of privacy support such a result. And, First Amendment rights may not be denuded by other tort claims set forth to circumvent the obvious weakness of a case presented under sections 50 and 51 of the Civil Rights Law.
Since no liability exists, the case is ripe for summary judgment which is granted in favor of the defendant.