Nancy ANONSEN and Michael Anonsen, Individually and as next friends of William Booher, Jr., Appellants,

v.

Phil DONAHUE, Multimedia Entertainment, Inc., Multimedia, Inc., Jose Pretlo, KTRK, Inc. d/b/a KTRK–TV, and Miriam Booher, Appellees.

No. 01–91–00377–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 3, 1993.

Rehearing Denied July 8, 1993.

David H. Berg, Houston, for appellants.

James R. George, Julie A. Ford, Austin, James B. Galbraith, Kenneth J. Bower, Galveston, Otto D. Hewitt, III, Alvin, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

The question before the Court is whether a person's right to make public the most private details of their own life is limited when the information also reveals painful intimacies of other persons. We find that it is not.

On January 5, 1989, appellee, Miriam (Mickey) Booher appeared as a guest on the Phil Donahue Show, the subject matter of which was pregnancies resulting from incest or rape. Booher told a nationwide audience the story of her husband's rape of her daughter from a previous marriage when the child was 11 years old. Booher also revealed that she had never reported the rape to authorities; that she had remained married to her husband for some 16 to 17 years after the incident; and that her 16–year–old adopted son, who had been raised as her daughter's adopted half-brother, was actually her daughter's biological child. Although the names of Booher's husband, daughter, and grandson were not disclosed on the air, Booher used her own full name. From time to time the caption "Daughter Had Husband's Baby" appeared on the screen as Booher spoke.

As a result of the broadcast, appellants brought this suit against Booher and the other appellees, alleging invasion of privacy through the public disclosure of private facts and intentional and negligent infliction of emotional distress. Their complaint is that by disclosing her own identity, Booher effectively disclosed their identities as well, thus exposing the incestuous rape of Anonsen and the circumstances of her child's birth to a nationwide audience. The trial court granted summary judgment in favor of all defendants. Finding that Booher's right to publish her personal account of her family's tragedy is protected speech under the first amendment of the United States Constitution, we affirm.

Booher told the Donahue show audience that she had met her husband in Germany

and moved to Arkansas with him and her six-year-old daughter, Nancy, whom he adopted. Sometime in 1972, Booher's husband raped Nancy, who was then 11 years old. Nancy became pregnant as a result and gave birth to a boy. Booher claimed that she did not know at the time that her husband was the child's father. Her husband insisted that they should give their daughter love and understanding and that they should adopt the child and raise it as their own. Booher assented. It was not until five years later that Booher learned the real story of her daughter's pregnancy when, in anger, her husband revealed the truth.

Booher claimed that upon learning the truth, she ordered her husband to leave but reconciled with him shortly thereafter because of economic hardship. Booher told the viewers that she could neither read or write English, could obtain only menial jobs, and she feared for her welfare and the welfare of her children. In addition, at that time, Booher's daughter did not know that Booher had learned the truth about the rape, and her grandson/adopted son "loved his daddy." Maintaining physical separation in the same house, Booher and her husband continued to live together until her adopted son was 15 years old. At that time, the boy learned the truth about his parents, and, according to Booher, there was no longer a need for pretense. She and her husband, who was at all relevant times a police officer, separated formally and were divorced sometime thereafter.

Appellants acknowledge that the story told by Booher is true. In addition, they assert the following facts that led up to Booher's appearance on the Donahue show. After Booher's husband left her and filed for divorce in 1988, she wrote a letter about the rape and sent it to four nationally broadcast talk shows. Booher was motivated by revenge and the desire to sell a book about her life. Only Donahue's producer responded to the letter. No member of Donahue's staff ever contacted Anonsen or her son to verify Booher's story or to determine whether they consented to the broadcast.

In fact, Anonsen testified that she told her mother not to go on the Donahue show because "too many people will get hurt." Booher told Anonsen that she had cancelled her plans to appear. Anonsen learned of her mother's appearance from her husband. Plaintiff, Michael Anonsen saw the show when it was broadcast on KTRK–TV. William, Jr., who was 16 years old at the time, testified that he watched the show with his father. After the show, his high school classmates harassed him, calling him a "bastard." He had to transfer to another school to escape the harassment.

Until the Donahue broadcast, the story of Anonsen's rape and the truth about William, Jr.'s real parents had never been reported to the authorities, or made a part of any public record. Appellants maintain that the story had been revealed only to a few close friends and relatives.

■ For purposes of this opinion we will accept all appellant's factual assertions as true and look at the summary judgment proof in a light most favorable to them. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Without specifically so holding, the United States Supreme Court has indicated that the tort of invasion of privacy may encompass a cause of action for public disclosure of private facts, even if the facts are true. *See Cox Broadcasting Co. v. Cohn*, 420 U.S. 469, 487–91, 95 S.Ct. 1029, 1042–44, 43 L.Ed.2d 328 (1975); *Time, Inc. v. Hill*, 385 U.S. 374, 383 n. 7, 87 S.Ct. 534, 539–40 n. 7, 17 L.Ed.2d 456 (1967); *see also, Virgil v. Time, Inc.*, 527 F.2d 1122, 1127 (9th Cir.1975). The purpose of the tort is to protect the individual against unwarranted publication of private facts. However, the protection of the individual must be balanced with the privilege of the press to give publicity to matters of public interest that arise out of the desire and the right of the public to know what is going on in the world and the freedom of the press and other information agencies to report it. *See Time, Inc.*, 385 U.S. at 388, 87 S.Ct. at 542; *see also generally*, Prosser and Keaton on Torts, (5th ed.1984); RESTATEMENT (SECOND) OF TORTS § 652 D &

cmt. § 652 D (1989). While there generally can be no liability for publication of truthful information contained in official records open to public inspection, *Floyd v. Park Cities People, Inc.*, 685 S.W.2d 96, 97–98 (Tex.App.—Dallas 1985, no writ), a different standard may apply in cases where the facts revealed are not a matter of any public record. *See Cox Broadcasting Corp.*, 420 U.S. at 491, 95 S.Ct. at 1044.

To prevail in a common-law tort cause of action for invasion of privacy, a plaintiff must establish the following elements:

(1) publicity was given to matters concerning the plaintiff's private life;

(2) the matters made public would be highly offensive to a reasonable person of ordinary sensibilities;

(3) the matters publicized were not of legitimate public concern.

*Indus. Found. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 682 (Tex.1976); *see also Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973).

The defendants, Booher, along with Multimedia Entertainment, Inc. and Multimedia, Inc., who produce the Donahue show; the show's host, Phil Donahue; Jose Pretlo, the producer of the show involving Booher; and KTRK, Inc., d/b/a KTRK TV, the television channel that broadcast the show in the Houston–Galveston area (collectively, the "media defendants"), moved for summary judgment on the following grounds:

(1) The published facts concerning incest, sexual abuse, and acceptance and understanding of the victims of these crimes, were of legitimate concern to the public.

(2) No private facts were published to the public at large.

(3) Booher's personal revelations were protected under the first and fourteenth Amendments of the United States Constitution.

In addition to the grounds asserted by the other defendants, KTRK moved for summary judgment on the grounds that (1) it had no duty to prescreen the show because it was justified in relying on Metromedia's warranty that the show did not violate such rights, and (2) the nationwide broadcast of the show, three days before it was aired in the Houston–Galveston area, precluded an action against KTRK for public disclosure of private facts.

■ To obtain summary judgment, a defendant has the burden of establishing by competent summary judgment proof that, as a matter of law, there is no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). While the defendants' motion for summary judgment and the plaintiffs' response addressed all three elements of the privacy tort, as well as the plaintiffs' other causes of action, we find the analysis of the third element to be dispositive of the appeal.

■ It is the third element of the tort, i.e., the publicizing of matters not of legitimate public concern, that gives rise to a first amendment privilege, sometimes referred to as the "newsworthiness defense," to publish or broadcast news or other matters of public interest. *Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 272 (5th Cir.1989); *Dresbach v. Doubleday & Co., Inc.*, 518 F.Supp. 1285, 1287 (D.D.C. 1981). The privilege to discuss matters of public interest extends to information concerning interesting phases of human activity and must embrace all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period. *Time, Inc.*, 385 U.S. at 388, 87 S.Ct. at 542; *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir.1980). The privilege is broad and extends beyond subjects of political or public affairs to all matters of the kind customarily regarded as "news" and all matters giving information to the public for purposes of education, amusement or enlightenment, where the public may reasonably be expected to have a legitimate interest in what is published. *Virgil*, 527 F.2d at 1129.

> The risk of . . . exposure [of the individual to others] is an essential incident of life in a society which places a primary value on freedom of speech and of press. Freedom of discussion, if it would fulfill

its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.

*Time, Inc.*, 385 U.S. at 388, 87 S.Ct. at 542.

Appellants assert that whether a subject is of legitimate public concern is a question of fact for a jury. Specifically, they contend that a jury should decide whether their identities were newsworthy so as to warrant revelation. We cannot agree, however, under the particular facts and circumstances of this case.

Whether the issue is a question of law or fact, there are two inquiries involved in a determination of whether Booher's revelations during her appearance on the Donahue show broadcast were protected by the first amendment: (1) whether the show's general subjects, incest, rape, and the children born of those crimes, were within the scope of the first amendment privilege; and if they were, (2) whether Mickey Booher's revelation of her own identity was also protected by the first amendment. *See Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 274 (5th Cir.1989); *Times Mirror Co. v. Superior Court*, 198 Cal.App.3d 1420, 244 Cal.Rptr. 556, 561–62 (1988), *cert. denied*, 488 U.S. 1036, 109 S.Ct. 862, 102 L.Ed.2d 986 (1989) (while the general subject matter of a publication may be newsworthy, it does not necessarily follow that all information given in the account is newsworthy).

In each case relied on by appellants, the court has no problem determining, as a matter of law, whether the general subject matter context of the published facts is newsworthy. In *Time, Inc.*, the Supreme Court had "no doubt that the subject of the Life article, the opening of a new play linked to an actual incident, is a matter of public interest" within the scope of protection afforded by constitutional guarantees of speech and press. *Time, Inc.*, 385 U.S. at 388, 87 S.Ct. at 542. The court in *Hall*

*v. Post*, 85 N.C.App. 610, 355 S.E.2d 819, 826 (1987), held that the topic of adoption and its related issues are of "legitimate interest, in a general way, to the public." Likewise, in *Virgil*, the court conceded that "the privilege to publicize newsworthy matters would, as a matter of law, extend to the general subject of surfing." *Virgil*, 527 F.2d at 1131.

Like those courts before us, we have no doubt that, as a matter of law, the crimes of incest and rape, the victimization of innocent people whose lives are touched by those crimes, and the importance of fostering understanding and healing of those victims, are matters of legitimate public concern. It is the second part of the inquiry that sets the instant case apart from most of the cases relied on by the parties, both in the trial court below and in their exhaustive briefs on appeal.

While frequently deciding the newsworthiness of *general topics* as a matter of law, courts have acknowledged the possible existence of fact questions about the newsworthiness of the plaintiff's identity, or of private facts about the plaintiff, allegedly unrelated to those general topics.[1] It is those highly fact-specific issues that some courts have found might raise an issue for determination by a jury. *See Times Mirror Co.*, 244 Cal.Rptr. at 564 (whether the publication of a murder witness' name was newsworthy was a question of fact); *see also Virgil*, 527 F.2d at 1131 (whether private facts unrelated to the sport were of legitimate public interest in relation to an article on surfing was a question of fact). As the *Virgil* court succinctly put it, "the fact that [individuals] engage in an activity in which the public can be said to have a general interest does not render every aspect of their lives subject to public disclosure." *Virgil*, 527 F.2d at 1131.

In those cases that address the newsworthiness of the plaintiff's identity, the identity of the plaintiff had been revealed by a

---

1. In *Hall*, the court found that the newsworthiness of the private facts published about the plaintiff's adoption, including the identities of the parties, was an issue on which reasonable minds could differ and should be decided by a jury. In addition, the court found a fact issue existed about whether some or all of the facts of the adoption were publicly known or were, in fact, private. *Hall*, 355 S.E.2d at 828.

third party who had no connection with the events other than to report them. *See, e.g., Cox Broadcasting Co.*, 420 U.S. at 473–74, 95 S.Ct. at 1035–36 (broadcasting company identified deceased rape victim during coverage of trial of alleged rapist). *Time, Inc.*, 385 U.S. at 374, 87 S.Ct. at 534 (magazine reported that new play portrayed experience of plaintiff and his family who had been held hostage in their home by escaped convicts); *Hall*, 355 S.E.2d at 820 (newspaper revealed identity of adopted child and her adoptive and birth mothers in a story about the details of that particular adoption); *Ross*, 870 F.2d at 271 (TV documentary revealed rape victim's first name and showed photo of her residence in a program supporting the pardon of an allegedly wrongly convicted rapist); *Harris by Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984) (newspaper published unrelated private facts about the family of a welfare applicant); *DeGregorio v. CBS, Inc.*, 123 Misc.2d 491, 473 N.Y.S.2d 922 (N.Y.1984) (in feature story about romance, broadcaster showed film of two hard hat workers holding hands on public street); *Sipple v. Chronicle Publishing Co.*, 154 Cal.App.3d 1040, 201 Cal.Rptr. 665 (1984) (newspaper revealed that man who saved President Ford from assassination was gay); *Roshto v. Hebert*, 439 So.2d 428 (La. 1983) (newspaper published a 25–year–old article containing details of criminal convictions for which plaintiffs had been pardoned); *Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118, 188 Cal.Rptr., 762 (1983) (newspaper revealed that class president was a transsexual in a follow-up article to an unrelated story about class finances); *Gilbert v. Medical Economics Co.*, 665 F.2d 305 (10th Cir.1981) (publisher revealed physician's name, photo, and psychiatric history in article about failure of medical profession to police its members).

We do not believe that the issue of newsworthiness of the parties' identities, whether a question of law or a question of fact, is relevant to the ultimate inquiry before us: whether Booher had the right to reveal *her own identity*.

In the present case, Booher, like her daughter and grandson, is herself one of the victims of the family tragedy of incest. Her reactions to that tragedy, the impact on her life of her daughter's rape, the birth of the child of that rape, whom she adopted and raised as her own, and her eventual discovery of the truth about her husband—all comprise her story as well as that of the other family members. Therefore, we are unable to agree with appellants' contention that a jury should be allowed to determine whether Booher's voluntary, undisguised appearance on the Donahue show was no more than "morbid and sensational prying."

We find two cases especially persuasive in our analysis of Booher's right to reveal her identity in telling the story of her experience, thus making the identities of appellants ascertainable. In *Campbell v. Seabury Press*, 614 F.2d 395 (5th Cir.1980), the plaintiff sued for invasion of privacy, complaining that private facts about her marriage were disclosed in an autobiography written by her husband's brother. As in the situation before us, the matters were not a part of any public record, nor, apparently, had they been widely publicized and thus rendered not private. The author revealed the facts in discussing the effect on his life of the marriage of his older brother, with whom he shared a very close relationship.

In *Campbell*, the trial court granted summary judgment for the author. The appellate court affirmed, holding that there is a first amendment privilege to publish truthful information of legitimate public concern, and the privilege encompasses dissemination of information relating to even individuals who have not sought or who have attempted to avoid publicity. *Campbell*, 614 F.2d at 397. The court observed that the privacy of such individuals is protected, however, by requiring that logical nexus exist between the identity of the individual and the matter of legitimate public interest.[2] *Id.* The court then deter-

---

**2.** It should be noted that the plaintiff in *Campbell* did not contend that the autobiography was

without legitimate public interest.

mined that the private facts of his brother's marriage, as they affected the author, had the requisite logical nexus to fall within the ambit of the constitutional protection. *Id.*

Likewise, in *Dresbach*, the plaintiff sued a book publisher and others for invasion of his privacy through their publication of a book about his brother's murder of their parents some 19 years earlier. Although the court acknowledged the absolute privilege accorded matters in the public record, it went on to decide the case on the grounds, specifically stating, "we must decide whether true matters in the book were matters of public interest at the time they were published and whether the inclusion of plaintiff in connection with those matters was legitimate, or whether the countervailing interest in plaintiff's privacy concerning those matters many years after the events renders the publication actionable." *Dresbach*, 518 F.Supp. at 1289–1290.

The court first determined that the subject matter of the book, the brother's past crime, his motivation, his prison experiences, his rehabilitation, and the support and lack of support extended by his friends and family, was a matter of legitimate public concern as a matter of law. *Dresbach*, 518 F.Supp. at 1290. Next, the court closely analyzed the disclosure of the plaintiff's identity under the logical nexus requirement articulated in *Campbell*. Based upon its analysis, the court concluded that the book could not have been written "without including private facts about the plaintiff's homelife which obviously was intimately bound up with his brother's homelife." *Id.* Unfortunately, appellants are in the same unenviable position in relation to Booher's life.

Acknowledging the dangers of creating restrictions on the individual's right to self-expression, the court stated:

[W]e tread on dangerous ground deciding exactly what matters are sufficiently relevant to a subject of legitimate public interest to be privileged. First Amendment values could obviously be threatened by the uncertainty such decisions could create for writers and publishers.

Only in cases of flagrant breach of privacy which has not been waived or obvious exploitation of public curiosity where no legitimate public interest exists should a court substitute its judgment for that of the publisher.... Clearly here, where the important public issues of crime, the criminal justice system, and rehabilitation are concerned, the defendants have shown an adequate nexus between matters of legitimate public interest and the disclosures about the plaintiff to merit constitutional protection.

*Dresbach*, 518 F.Supp. at 1290–1291 (citations omitted).

In the context of their personal stories, which were undoubtedly theirs to tell, both Campbell's and Dresbach's revelations of private facts about others involved in their lives were protected by the first amendment. We find that Booher's rights are similarly protected. As appellees suggest, to hold otherwise would be to imply that one's autobiography must be written anonymously.

Like the court in *Dresbach*, we are not without compassion for appellants, who certainly have been victimized by the tragic events revealed on the Donahue program. We are further mindful that the protection of Booher's right to reveal her story and her identity imposes additional emotional suffering upon appellants. Sensitive information which appellants have to some extent attempted to keep secret, has been given unwelcome publicity, causing them pain. Yet, we conclude that to allow a cause of action based upon Booher's truthful and undisguised account of her own and her family's experience is inconsistent with the first amendment. Freedom of speech would be severely compromised if discussions of matters of public interest were circumscribed in the manner advocated by appellants.

The summary judgment must, therefore, be affirmed.