The STAR–TELEGRAM, INC., d/b/a FORT WORTH STAR–TELEGRAM; and Betsy C.M. Tong, Individually and as Journalist for Star–Telegram, Inc., d/b/a Fort Worth Star–Telegram, Petitioners,

v.

Jane DOE, Respondent.

No. D–4578.

Supreme Court of Texas.

Argued Oct. 18, 1994.

Decided June 8, 1995.

Rehearing Overruled March 7, 1996.

**472**

Thomas J. Williams, Fort Worth, for petitioners.

David L. Evans, Mark A. Haney, Richard C. DeBerry, Fort Worth, for respondent.

GAMMAGE, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, HECHT, CORNYN, ENOCH, SPECTOR and OWEN, Justices, join.

GAMMAGE, Justice.

In this invasion of privacy case, the issue is whether a newspaper may be held liable for disclosing private facts about a victim of sexual assault which made the victim identifiable by her acquaintances. The trial court rendered summary judgment in favor of The Star–Telegram and Tong without specifying the ground on which the judgment was based. The court of appeals reversed and remanded, holding there were genuine issues of material fact whether the information was lawfully obtained. 864 S.W.2d 790. We hold that under the specific facts presented, the information disclosed by the newspaper concerned matters of legitimate public concern. For this reason, we reverse the court of appeals' judgment and affirm the trial court's summary judgment that the victim take nothing.

### I.

An assailant sexually assaulted and terrorized Jane Doe in her home in the darkness of the early morning hours. He also robbed Doe of money and personal possessions, including her Jaguar automobile. The assail-ant left Doe tied with strips of bed sheets, but she managed to free herself and call the police. Shortly thereafter, Doe gave a detailed statement to the police, and the police prepared a written report regarding the incident. Two days after the assault, the police apprehended a suspect who was driving Doe's Jaguar in Oklahoma.

After the assault, Betsy Tong, a "police beat" reporter for The Star–Telegram, Inc. d/b/a Fort Worth Star–Telegram, went to the Fort Worth Police Department in search of newsworthy events to report. While at the police station, Tong viewed an unredacted copy of the Doe police report. The report disclosed certain information about Doe including her age, her occupation as "owner" of a business, her business address, the make, model and color of her automobile, and a narrative description of the details of the offense, including the address where the offense occurred. Because the narrative makes clear that the offense occurred in Doe's home, the police report literally disclosed Doe's home address. Tong alleges that Sergeant Timmons, a Fort Worth police officer, told her about the assault on Doe and that someone from the Fort Worth Police Department provided her with a copy of the related police report. In an affidavit, Sergeant Timmons denied providing Tong with any identifying information about Doe. Sergeant Timmons stated that he repeatedly told Tong that it is against the procedure and practices of the Fort Worth Police Department to release any identifying information about the victim of a sexual assault. He further testified that he never violated the department policy against releasing such information, and to his knowledge no members of the police department violated this policy.

Tong wrote and The Star–Telegram published two newspaper articles which gave rise to this lawsuit. The first article, published the day after the police report, disclosed Doe's age, the relative location of her residence, that she owned a home security system, that she took medication and that she owned a 1984 black Jaguar automobile. The newspaper published a second article the following day, giving another detailed account of the sexual assault and disclosing the addi-

tional fact that Doe owned a travel agency. It is undisputed that the facts revealed in both articles were true. Although Tong did not reveal Doe's name, Doe contended the details in the articles allowed all those who knew her to readily identify her as the victim.

Doe sued The Star–Telegram and Tong (collectively, "Star–Telegram") for the public disclosure of private facts, for intentional and/or negligent infliction of emotional distress, and for negligence and negligent supervision. After a mandamus concerning a protective order was resolved by this Court, *Star–Telegram v. Walker,* 834 S.W.2d 54 (Tex.1992) (orig. proceeding), Star–Telegram moved for summary judgment on several grounds. Star–Telegram alleged that the matters publicized in the articles were of legitimate public concern. Star–Telegram also argued that it should prevail as a matter of law under the constitutional standard set forth in *The Florida Star v. B.J.F.,* 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), providing that "[i]f a newspaper lawfully obtains truthful information about a matter of public significance, then state officials may not constitutionally punish publication of the information absent a need to further a state interest of the highest order." *Id.* at 533, 109 S.Ct. at 2609. The trial court granted summary judgment without specifying the ground on which judgment was based.

The court of appeals reversed the trial court's judgment. The court held that the disposition of the case was directly controlled by *Florida Star,* and that a question of fact existed whether Star–Telegram lawfully obtained the information, making summary judgment improper. The court further held that the summary judgment was not supportable under Star–Telegram's other theory, that the articles chronicled matters of legitimate public concern. The court concluded that even if the articles contained matters of legitimate public concern, the publications were not protected if the information was unlawfully obtained.

## II.

■ Star–Telegram asserts that it is entitled to summary judgment on a procedural ground. Because Doe did not assign error to each basis on which the newspaper moved for summary judgment, Star–Telegram argues Doe has waived the other grounds which are presumed to be valid. When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989). The appellate court must affirm the summary judgment if any one of the movant's theories has merit. *Id.* Star–Telegram contends Doe did not address its claim that the press should be insulated from civil liability whenever it publishes the truth. In challenging a summary judgment, it is sufficient that an appellant broadly assert the trial court erred in granting summary judgment. *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Under this point of error, the appellant may argue all the reasons the trial court erred in granting the summary judgment. *Id.* Doe argued before the court of appeals that even if Star–Telegram lawfully obtained information of legitimate public concern, the newspaper should still be held liable. This argument necessarily addresses Star–Telegram's claim that it is entitled to publish some facts with impunity simply because they are true. We conclude Doe appropriately attacked each ground for summary judgment asserted by Star–Telegram.

## III.

■ The right to personal privacy was first articulated in 1890, in an article arguing that the "right to be let alone" is as much a part of personal liberty as the right to be free from physical restraint and the right to possess property. Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy,* 4 HARV.L.REV. 193, 193 (1890). The concept has since been incorporated into a common-law tort in Texas and serves to protect individuals from invasion of privacy. *Billings v. Atkinson,* 489 S.W.2d 858, 859–60 (Tex.1973). Doe seeks to recover under the invasion of privacy tort for public disclosure of embarrassing private facts, which has three ele-

ments: (1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern. *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).

■ We review the evidence in a summary judgment case in the light most favorable to the nonmovant and accept all of the nonmovant's factual assertions as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). Because Star–Telegram has moved for summary judgment, the newspaper has the burden of establishing by competent summary judgment proof that, as a matter of law, there is no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Star–Telegram attempted to disprove only the third element, whether the information publicized was not of legitimate public concern.

## IV.

■ Generally, there is a presumption under Texas law that the public has no legitimate interest in private embarrassing facts about private citizens. *Industrial Found.*, 540 S.W.2d at 685. The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure. *Id.* While the general subject matter of a publication may be a matter of legitimate public concern, it does not necessarily follow that all information given in the account is newsworthy. *See Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 274 (5th Cir.1989), *cert. denied*, 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316; *Anonsen v. Donahue*, 857 S.W.2d 700, 704 (Tex.App.—Houston [1st Dist.] 1993, writ denied), *cert. denied*, —— U.S. ——, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994). A logical nexus should exist between the rape victim's identity, or the private facts disclosed about the victim, and the general

subject matter of the crime. *Id.* Private details about a rape victim or the victim's identity may be irrelevant when the details are not uniquely crucial to the case, or when the publisher's "public concern" goes to a general, sociological issue. *See Ross*, 870 F.2d at 274–75 (identifying particular victim, details of her attack, and her knowledge were of unique credibility and persuasive force in story).

■ Doe claims the articles about the sexual assault upon her included information which allowed those who knew her to deduce her identity. Specifically, she complains about the publication of the following facts which, when taken together, allowed her acquaintances to identify her: (1) that she lives on the East Side of Fort Worth, (2) that she drives a Jaguar automobile, (3) that she owns a travel agency, (4) that she takes medication, (5) that she owns a home security system, and (6) her age.

Doe admits the crime itself was of legitimate public concern, but argues that the factual details disclosed combined to go beyond merely reporting the crime. By piecing the details together, those who knew her well could deduce her identity as the victim. Though the article did *not* state her name, or give her telephone number or address, Doe contends that to knowledgeable friends and acquaintances the article effectively disclosed her identity. Even so, we cannot say that the articles in question, considered in their full context, disclosed embarrassing private facts which were not of legitimate public concern. Because Doe relied only upon these facts, summary judgment was proper.

Newspapers and other media should take precautions to avoid unwarranted public disclosure and embarrassment of innocent individuals who may be involved in otherwise newsworthy events of legitimate public interest. But it would be impossible to require them to anticipate and take action to avoid every conceivable circumstance where a party might be subjected to the stress of some unpleasant or undesired notoriety without an unacceptable chilling effect on the media itself. Facts which do not directly identify an innocent individual but which make that person identifiable to persons already aware of

uniquely identifying personal information, may or may not be of legitimate public interest. To require the media to sort through an inventory of facts, to deliberate, and to catalogue each of them according to their individual and cumulative impact under all circumstances, would impose an impossible task; a task which foreseeably could cause critical information of legitimate public interest to be withheld until it becomes untimely and worthless to an informed public.

Because Star–Telegram's summary judgment evidence negated an essential element of Doe's invasion of privacy cause of action, we do not reach the constitutional issues addressed by the court of appeals involving whether truthful information was "lawfully obtained." *See Florida Star*, 491 U.S. at 533, 109 S.Ct. at 2609. We likewise do not address the merits of any of Star–Telegram's other defensive constitutional claims. We reverse the judgment of the court of appeals and render judgment that the plaintiff take nothing.

GONZALEZ, Justice, concurring.

Because as a matter of law the published information is of legitimate public concern, I concur in the Court's opinion and judgment. I write separately, however, to caution judges against putting themselves or jurors in the role of editors by second-guessing editorial decisions. I am concerned that blue-penciling of news articles by judges or juries will have a chilling effect on the freedom of the press to determine what is a matter of legitimate public concern.

In *Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), a rape victim, B.J.F., sued the Florida Star newspaper under a Florida statute which made it unlawful to print the name of a sexual offense victim. *Id.* at 526 & n. 1, 109 S.Ct. at 2605 n. 1. The article, which identified B.J.F. by name, read:

[B.J.F.] reported on Thursday, October 20, she was crossing Brentwood Park, which is in the 500 block of Golfair Boulevard, enroute to her bus stop, when an unknown black man ran up behind the lady and placed a knife to her neck and told her not to yell. The suspect then undressed the lady and had sexual intercourse with her before fleeing the scene with her 60 cents, Timex watch and gold necklace. Patrol efforts have been suspended concerning this incident because of a lack of evidence.

*Id.* at 527, 109 S.Ct. at 2606. The newspaper derived the information for the article from a lawfully obtained police report which disclosed B.J.F.'s name. *Id.* The United States Supreme Court held that on the facts of the case, imposing liability on the newspaper violated the First Amendment, even though the paper printed the victim's full name in violation of the statute. *Id.* at 541, 109 S.Ct. at 2613.

In contrast, in this case, Star–Telegram did not identify Jane Doe by name. Rather, the newspaper published certain details about Jane Doe which she contends make her readily identifiable. The information which Doe alleges invaded her privacy appeared in the following articles, quoted in full below:

RAPE SUSPECT ARRESTED IN OKLAHOMA DRIVING VICTIM'S CAR

FORT WORTH—A 28-year-old Fort Worth man is in custody in Oklahoma after police there found him driving a 1984 black Jaguar owned by a Fort Worth woman who was terrorized and raped in her East Side home Sunday.

Fort Worth police have issued an auto theft warrant for the man and are awaiting extradition proceedings.

Police said the suspect lives in an apartment complex three blocks from the victim. Her name and address are being withheld.

Sexual Assault Sgt. C.D. Timmons said the suspect likely targeted the woman who frequented a convenience store near his home.

Police answering a call at 2:41 a.m. heard the woman screaming from inside the home, Timmons said. She had been tied to the bed with strips of bed sheets.

The woman, 46, was alone Sunday night. She told police she had forgotten to turn on a security system.

About 12:30 a.m., the woman said she was awakened by a butcher knife-wielding man who hid his face with a ski mask. Police speculated he entered through a window.

When she attempted to reach for a gun in a night table drawer, he overpowered her, threatening to whip her with it, police said.

Then he repeatedly raped her, terrorizing her with the knife, police said.

The woman begged to be allowed to take medication, and the man gave her a pill and some water. Afterward he forced her to perform a sexual act and tied her with the bed sheets.

He then left, taking nearly $100, personal effects and her car.

She was able to struggle free and called 911.

"She's very lucky to be alive," Timmons said.

Yesterday, Oklahoma City police stopped a man who was driving a black Jaguar, Timmons said. There were four other people in the car who were wanted for various parole violations, he said.

The suspect is a construction worker who apparently was recently paroled from Texas Department of Corrections on an aggravated robbery with a deadly weapon conviction in 1983, Timmons said. He was sentenced to 15 years imprisonment.

Betsy C.M. Tong, FORT WORTH STAR-TELEGRAM, Sept. 27, 1989 (p.m. ed.).

### EXTRADITION SOUGHT FOR MAN ARRESTED DRIVING RAPE VICTIM'S CAR

FORT . WORTH—A 28–year–old Fort Worth man was in custody yesterday in Oklahoma City after police there found him driving a 1984 black Jaguar owned by a woman who was terrorized and raped in her East Side home Monday.

Fort Worth police have issued an auto theft warrant for the man and are awaiting extradition.

Police said the suspect lives in an apartment complex just three blocks from the 46–year–old victim, whose name and address are being withheld.

Sgt. C.D. Timmons said the woman probably was targeted because she frequently shopped at a nearby convenience store.

Police answering a call about 2:41 a.m. Monday heard the woman screaming from inside the home, which is in a white-collar neighborhood, Timmons said. She had been tied to the bed with strips of sheets.

The woman, who owns a travel agency, was alone Sunday . night. She told police she had forgotten to turn on a security system before going to bed sometime after 11 p.m.

About 12:30 a.m., a butcher knife-wielding man wearing a ski mask entered her house through a window.

When the woman attempted to reach for a gun in a night stand by her bed, he overpowered her and took the gun. He threatened to beat her with it, police said.

Then he repeatedly raped her, terrorizing her with the knife, police said.

The woman begged to be allowed to take medication, so the man gave her a pill and some water. Afterward he forced her to perform a sexual act and tied her with the bed sheets, police said.

He then left, taking nearly $100, personal effects and her car, police said.

She was able to struggle free and call 911.

"She's very lucky to be alive," Timmons said. Police are awaiting results of a rape exam.

On Tuesday, police in Oklahoma City stopped a man who was driving a black Jaguar through a high-crime neighborhood on the northeast part of the city, said Sgt. Wimpy Martin of that city's auto theft unit. Martin declined to provide additional details of the arrest, saying the case is under investigation.

The suspect has a history of violence, parole officials said.

[H]e was convicted of aggravated robbery with a deadly weapon in 1983. He was sentenced to 15 years in the Texas Department of Corrections. He also has a

1981 burglary conviction in Taylor County (Abilene).

The man was paroled to Tarrant County on July 7. He was required to check in six times a month and to submit to urinalysis on random visits, said parole supervisor Larry Hermance.

A parole officer last saw the suspect Sept. 23, one day before the rape of the 46–year–old woman.

"Once again we have an offense that occurs the day after we see the man," Hermance said. Another parolee, Kenneth Reed Smith, was recently charged with the murder and rape of a 14–year–old girl. He had visited his parole officer before the Sept. 15 slaying.

The suspect in the latest rape told parole officers he was self-employed.

*Id.*, Sept. 28, 1989 (a.m. ed.), at 27.

After Star–Telegram printed these articles, Doe's assailant was arrested, indicted, and tried for his heinous offense. The state's criminal prosecutor disclosed Doe's true identity several times—in the indictment, in a motion in limine, and in the jury charge. *Star–Telegram, Inc. v. Walker*, 834 S.W.2d 54, 56 (Tex.1992) (orig. proceeding). Although Texas law permits a rape victim to elect to have a pseudonym used in place of her true name in all records of the case, Doe did not make such an election until October 3, 1989.

As I wrote in *Valenzuela v. Aquino*, 853 S.W.2d 512, 519 (Tex.1993) (Gonzalez, J., dissenting), "The uncertainty of not knowing where one might be penalized for expressive speech would have an unacceptable chilling effect on the right of free speech." The same rationale applies to the constitutional right of freedom of the press. *See Florida Star*, 491 U.S. at 535–36, 109 S.Ct. at 2610–11 (noting that an important First Amendment concern is the danger that journalists will excessively self-censor if they can be held liable for damages for printing truthful information obtained by legal means). Journalists should be able "to respond to journalistic exigencies" without fear of liability imposed by aggressive judicial editing. *Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 275 (5th Cir.), *cert. denied*, 493 U.S. 935, 110

S.Ct. 326, 107 L.Ed.2d 316 (1989). Thus, judges should be wary of substituting their or a jury's judgment for that of a newspaper publisher in cases such as this which involve matters of legitimate public concern. *Anonsen v. Donahue*, 857 S.W.2d 700, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (quoting *Dresbach v. Doubleday & Co.*, 518 F.Supp. 1285, 1290–91 (D.D.C.1981)), *cert. denied*, —— U.S. ——, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994).

In balancing the rights of the parties to this suit, I believe that under these facts, the First Amendment right of freedom of the press prevails over Doe's right of privacy.