

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00366-CV
_____

KAREN PHAM, D/B/A SAIGON RESTAURANT, APPELLANT

V.

STATE FARM LLOYDS, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 10,3161-B, Honorable John Board, Presiding

October 22, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Karen Pham, d/b/a Saigon Restaurant, appeals from a final judgment denying her recovery against State Farm Lloyds. The dispute arose from damage incurred by her restaurant building during a hailstorm. State Farm insured the facility and responded to Pham's claim. Payments were made over the course of the insurer's adjustment of the claim. Yet, Pham considered them insufficient to cover all the damage incurred. This resulted in her suing State Farm and alleging both contractual and extra-contractual causes of action. The insurer answered the suit and eventually moved for both a

traditional and no-evidence summary judgment on the extra-contractual claims. While the trial court denied the former, it granted the latter. Immediately thereafter, it convened a jury trial on Pham's remaining claims. The jury awarded her $15,000 in damages for State Farm's breach of the policy. Because the award was significantly less than a previous settlement offer Pham failed to accept, the trial court determined that she was obligated to pay State Farm's litigation costs.[1] Those costs were then offset against her recovery, thereby resulting in her receiving nothing from the insurer. Before us, she contends that the trial court erred in granting the no-evidence motion for summary judgment and asserts two issues supporting her complaint.[2] We affirm.

*Exclusion of Deposition*

The first issue we address is whether the trial court erred in excluding from evidence the deposition, or excerpts thereof, of Robert Kitto. Pham attempted to use the information as evidence establishing a pattern or practice of State Farm purportedly rejecting valid claims. Her effort was incorporated into a supplemental response to the summary judgment motion, which response was filed a mere three days before the scheduled hearing on the summary judgment motion. Though it was attached as Exhibit A to her own request for leave to file the document, State Farm objected to the trial court's consideration of the deposition.

At the summary judgment hearing, the litigants were granted opportunity to present argument addressing both the summary judgment motions and objections to the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(a) (West 2015) (stating that "[i]f a settlement offer is made and rejected and the judgment to be rendered will be significantly less favorable to the rejecting party than was the settlement offer, the offering party shall recover litigation costs from the rejecting party").

[2] This Court submitted the dispute via oral argument. Only counsel for State Farm appeared despite Pham having been sent proper notice of the setting via her attorney of record.

supplement.  The trial court denied State Farm's traditional motion but granted both of its no-evidence motion and objections to the use of the Kitto deposition.  The basis for excluding the deposition stemmed from the tenor of the excerpts Pham intended to admit. They involved Kitto's reiteration of statements made by an adjuster State Farm had hired but who had since died.  The trial court was concerned about State Farm "hav[ing] no ability to controvert those statements with the witness being dead."  So, it concluded that the information was subject to exclusion under the "dead man statute" and Rule 403 of the Texas Rules of Evidence.  Pham argues that neither ground warranted exclusion. We overrule the issue for several reasons.

We assess whether a trial court erred in admitting or excluding evidence under the standard of abused discretion.  *Spriggs v. Gonzales*, 07-16-00418-CV, 2018 Tex. App. LEXIS 4875, at *7 (Tex. App.—Amarillo June 28, 2018, no pet.) (mem. op.).  If the ruling comports with guiding rules and principles and is not otherwise arbitrary or capricious, it is not an instance of abused discretion.  *See Fitzgerald v. Water Rock Outdoors, LLC*, 536 S.W.3d 112, 119 (Tex. App.—Amarillo 2017, pet. denied).   In other words, it is not an abuse of discretion if supported by any applicable theory, even one that the parties failed to mention.  *Payton v. Ashton*, 29 S.W.3d 896, 899 n.3 (Tex. App.—Amarillo 2000, no pet.).   There was no abused discretion here.

First, there is no order of record granting Pham's motion for leave to file the belated summary judgment response.  As stated in the rules of civil procedure, summary judgment evidence may be filed late but only with leave of the trial court.  TEX. R. CIV. P. 166a(c); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *Conrad v. Tex. BAC Home Loan Servicing, LP*, 07-12-00305-CV, 2014 Tex. App. LEXIS 1433, at *5 (Tex.

App.—Amarillo Feb. 7, 2014, no pet.) (mem. op.). "When a party files late summary judgment evidence and no order granting leave to file appears in the record, the evidence will not be considered as being before the court." *Conrad*, 2014 Tex. App. LEXIS 1433, at *5. Again, there is no order granting Pham leave to file the belated summary judgment response. Nor did she complain on appeal about the trial court failing to grant her leave to belatedly file the response. Logic suggests that before she can complain about the supposed misapplication of evidentiary rules to evidence underlying her response, Pham must first show that the response itself was properly before the court. She did not and cannot, given the absence of leave to file the belated document. So, it matters not whether the dead man statute or Rule 403 were misapplied. In other words, the latter issue was not perfected for review.

Second, showing that a court abused its discretion necessarily entails establishing that the grounds upon which it acted were invalid. Doing that requires the complainant to cite to legal authority and provide legal argument based on that authority. *See Dimock Operating Co. v. Sutherland Energy Co., LLC*, No. 07-16-00230-CV, 2018 Tex. App. LEXIS 2865, at *31 (Tex. App.—Amarillo Apr. 24, 2018, pet. denied) (mem. op. on reh'g). Failing to either cite to authority or provide substantive analysis constitutes inadequate briefing and results in the loss of the complaint on appeal. *Id.*

Here, the trial court mentioned two rules of evidence in deciding to exclude the Kitto deposition. One was the dead man statute, TEX. R. EVID. 601, and the other was Texas Rule of Evidence 403. Thus, it was incumbent upon Pham to illustrate, via adequate briefing, why neither rule of evidence supported the decision. Yet, little effort was expended to explain why the trial court could not rely on Rule 403. She merely cited

4

the rule, its text, opined that "[n]one of the listed perils were at issue in the underlying trial," proposed that State Farm had equal opportunity to depose Kitto, and concluded that the deposition was "crucial in Appellant meeting her burden of proof." Ignored, though, was the trial court's reason underlying its application of Rule 403.

Its concern focused not upon State Farm's ability to depose Kitto but, rather, the insurer's inability "to controvert those statements with the witness being dead." Again, the portion of the Kitto deposition Pham sought to use was that wherein Kitto reiterated statements purportedly uttered by a dead man prior to death. Why the inability of a party to question a dead person purportedly falls outside the scope of "unfair prejudice," *see* TEX. R. EVID. 403 (stating that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice"), was a topic Pham said nothing about. She provided us with neither authority nor substantive analysis on the matter. Thus, her complaint about application of Rule 403 was inadequately briefed. Being inadequately briefed, the argument fails to illustrate that neither Rule 601 nor 403 were available to the trial court.

*No-Evidence Summary Judgment*

Next, we address the argument that the trial court erred in granting the no-evidence motion for summary judgment. One element for summary judgment involved proof of an independent injury or injury other than damages reflecting the loss of policy benefits. Ultimately, the trial court announced, "for the record," at the summary judgment hearing, that it was going to "grant the no evidence motion *in its entirety*." (Emphasis added). So too did it then allude to one particular ground and a Supreme Court opinion purportedly discussing the ground, i.e., *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex.

5

2018). The ground in question was the need to prove an independent injury to prosecute a viable extra-contractual claim. Upon so alluding, the trial court then said it deemed itself bound to follow *Menchaca*. We mention this because of its affect upon Pham's burden on appeal.

If a summary judgment movant asserts multiple grounds for summary judgment and the trial court grants the motion without mentioning a specific ground, the non-movant on appeal must show why none of the grounds support the ruling. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). To the extent that the trial court expressly said it was granting the motion "in its entirety," we construe that to mean it believed **each** ground mentioned by State Farm warranted entry of a no-evidence summary judgment. Its passing allusion to *Menchaca* merely served to highlight one of those grounds but not otherwise restrict the scope of its ruling and the reasons therefor. In other words, *Menchaca* and its discussion about proof of an independent injury was but one of the many grounds urged by State Farm and found viable by the trial court. Moreover, our conclusion finds support in Pham's appellate argument.

Not only did Pham attempt to address the topic of *Menchaca* and independent injury, but she also argued, in passing, that material issues of fact existed. For instance, those issues of fact concerned evidence of misrepresentations allegedly uttered by State Farm and a delay in payment when liability reasonably became apparent. Such pertained to other elements attacked by State Farm via its no-evidence motion, not to independent injury or *Menchaca*. Had the trial court's decision simply been founded on *Menchaca* and independent injury, there would have been no need for Pham to discuss other components of the State Farm motion. So, her effort to discuss them lends further

6

credence to our conclusion that the trial court did not limit the grounds upon which it relied when granting the motion "in its entirety." Thus, Pham had the burden on appeal to illustrate why none of the grounds urged by State Farm in its no-evidence motion supported summary judgment. That burden went unsatisfied is various respects.

First, regarding Pham's Texas Insurance Code violations, Start Farm argued that she had no evidence establishing that it "engaged in an act or practice that violated Texas Insurance Code chapter 541, subchapter B" or that an "act or practice [of it] was a producing cause of actual damages." While Pham mentioned, in her appellant's brief, alleged acts or practices she thought were encompassed within the Code, she failed to discuss the actual damages or their quantum, if any, she purportedly suffered. Nor did she explain how the acts and practices where the "producing cause" of those undeveloped damages. Thus, her effort fell short of illustrating why summary judgment was supported by none of the grounds urged by State Farm to defeat recovery on her Insurance Code causes of action.

Second, regarding the chapter 542 of the Texas Insurance Code, State Farm alleged in its no-evidence motion that Pham had "no evidence that [she] gave proper notice of their claim in accordance with §§ 542.051(4) and 542.055 of the Texas Insurance Code" and that she had "no evidence that State Farm failed to timely (1) acknowledge, investigate, or request information about the claim; (2) accept, reject, or extend time to decide the claim; or (3) pay the claim." On appeal, she did not address the element of proper notice or attempt to explain or illustrate through citation to evidence of record that she afforded the insurer proper notice of her claim. Indeed, chapter 542 of

the Insurance Code and the causes of action thereunder went unmentioned in her brief. So, her appellate burden went unsatisfied regarding the chapter 542 complaints.

Third, regarding her claim of bad faith, State Farm alleged in its summary judgment motion that Pham had no evidence that 1) it "denied or delayed payment when it knew or should have known liability was reasonably clear" and 2) Pham "suffered an injury independent of those that would have resulted from a wrongful denial of policy benefits." On appeal, Pham's primarily addressed the second ground, that is, evidence of an independent injury. She argued that evidence of same was unnecessary because she sought policy benefits which State Farm was contractually obligated to pay and did not.

As for the first ground, she uttered, in her appellant's brief, various general conclusory statements about State Farm 1) initially contending that, while some of the hail damage was caused by a storm covered under the policy, much of it was not; 2) representing Pham's "building was not that damaged and thus, she [Pham] was objectively and wrongfully underpaid"; 3) retaining an adjuster who "clearly knew, or reasonably should have known, that a large-scale hail event struck [Pham's] property causing the extensive covered damage at issue" but nonetheless conducted a "result oriented" investigation by asserting that the damage was caused by prior storms; and 4) State Farm ultimately paid Pham much more than it originally tendered. She generally failed to accompany these conclusory allegations with citation to the record.

An insurer breaches its duty of good faith and fair dealing when it fails to settle a claim when it knew or should have known that it was reasonably clear the claim was covered. *United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997) (per curiam); *Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 816 (Tex.

8

App.—Dallas 2013, no pet.). The test has two components. The first involves an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claim. *In re Liberty Mut. Ins. Co.*, No. 14-09-00086-CV, 2009 Tex. App. LEXIS 1234, at *10 (Tex. App.—Houston [14th Dist.] Feb. 24, 2009, orig. proceeding) (mem. op.). The second component balances the right of an insurer to reject an invalid claim against its duty to investigate and pay compensable claims. *Id.* The insured satisfies the second prong by illustrating that the insurer actually knew there was no reasonable basis to deny or delay payment of the claim or should have known there was no reasonable basis to deny or delay based upon its investigation. *Id.* Moreover, the focus is not on whether the claim was validly rejected but on the reasonableness of the insurer's conduct in rejecting the claim or delaying payment of the claim. *Id.* at *10–11; *see also State Farm Lloyds v. Webb*, No. 09-15-00408-CV, 2017 Tex. App. LEXIS 4025, at *25 (Tex. App.—Beaumont May 4, 2017, pet. denied) (mem. op.) (stating the same.). So, it is not enough for the insured to merely present evidence that amounts to a bona fide dispute or that the insurer incorrectly viewed the factual circumstances or misinterpreted the policy. *See In re Liberty Mut. Ins. Co.,* 2009 Tex. App. LEXIS 1234, at *11; *accord Webb*, 2017 Tex. App. LEXIS 4025, at *25 (stating that evidence of a bona fide dispute or disagreement between experts will not support a judgment of bad faith). Nor is mere proof that the insurer erred in denying the claim enough. *See Williams*, 955 S.W.2d at 268; *Marquis Acquisitions, Inc.*, 409 S.W.3d at 816. Finally, whether there is or is not a reasonable basis for denying or delaying payment of a claim is based on the facts before the insurer at the time payment was delayed or the

claim denied.  *Webb*, 2017 Tex. App. LEXIS 4025, at *25; *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 390 (Tex. App.—Houston [1st Dist. 2011, no pet.).

Returning to the aforementioned references by Pham to purported acts and evidence of bad faith, none were accompanied by actual citation to the appellate record depicting the requisite evidence of bad faith.  For instance, she cited to the State Farm adjuster's report and the internal file history while concluding that the adjuster conducted a "result oriented" investigation and "objectively underpaid" the claim.  We found nothing in the former from which one could infer that the adjuster's conduct was result oriented or that he knew or should have known the covered damage was more extensive.

Admittedly, the insurer's case file showed that State Farm engaged in further investigations and encountered additional covered damage.  From that evidence, one could infer that the insurer's initial investigations may have been deficient and its calculations erroneous.  Yet, the touchstone of bad faith is not the presence of error on the part of the insurer but on the reasonableness or unreasonableness of its conduct. Engaging in an inaccurate calculation of a claim may be the starting point for showing unreasonableness, but it alone is not the end point.  A mistake may be just that—a mistake.  Insurers make mistakes, but mere mistakes do not mean they acted in bad faith. *See In re Liberty Mut. Ins. Co.*, 2009 Tex. App. LEXIS 1234, at *11 (stating that evidence of an insurer incorrectly viewing the factual circumstances is not enough); *Williams*, 955 S.W.2d at 268 (stating that mere proof that the insurer erred in denying the claim is not enough).  It was Pham's burden to present evidence that State Farm, at the time of its decisions, actually knew or should have reasonably known it had no reasonable basis to

calculate the loss as it did and delay payment.  The nominal record citation which she offered us fell short of that.

We overrule Pham's issues and affirm the trial court's final judgment.


Brian Quinn
Chief Justice