

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

Nos. 04-19-00438-CR & 04-19-00450-CR

**EX PARTE** Robert **METZGER**

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A1920
and
From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 7000
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: August 26, 2020

AFFIRMED

Appellant Robert Metzger was indicted in both Kerr and Gillespie Counties for multiple counts of violating sections 21.15(b)(1) and (b)(2) of the Texas Penal Code, the "Invasive Visual Recording" statute. Both indictments were filed in the 216th Judicial District Court, and the cases proceeded together. Metzger filed pretrial applications for writs of habeas corpus and motions to quash the indictments, alleging the provisions of section 21.15 under which he was charged are facially overbroad in violation of the First Amendment to the United States Constitution. The trial court granted the writs, held a non-evidentiary hearing on the cases, and denied relief. Metzger appeals the denial of relief. We affirm the trial court's orders.

## BACKGROUND

The Texas Legislature enacted the current version of section 21.15 in 2015, after the Texas Court of Criminal Appeals declared the previous version of section 21.15(b)(1) unconstitutional. *See Ex parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2015).[1] Sections 21.15(b)(1) and (b)(2) now provide:

> (b) A person commits an offense if, without the other person's consent and with intent to invade the privacy of the other person, the person:
>
> > (1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of an intimate area of another person if the other person has a reasonable expectation that the intimate area is not subject to public view;
> >
> > (2) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another in a bathroom or changing room;

TEX. PENAL CODE § 21.15(b)(1)-(2). Section 21.15 defines "intimate area" as "the naked or clothed genitals, pubic area, anus, buttocks, or female breast of a person" and defines "changing room" as "a room or portioned area provided for or primarily used for the changing of clothing and includes dressing rooms, locker rooms, and swimwear changing areas." *Id.* § 21.15(a)(2), (3). An offense under section 21.15 is a state jail felony, punishable by confinement in a state jail for

---

[1] The version of section 21.15(b)(1) addressed by the Texas Court of Criminal Appeals in *Thompson*, provided:

> (b) a person commits an offense if the person:
> > (1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another at a location that is not a bathroom or private dressing room:
> > > (A) without the other person's consent; and
> > > (B) with intent to arouse or gratify the sexual desire of any person.

Act of May 17, 2001, 77th Leg., R.S., ch. 458, § 1, 2001 Tex. Gen. Laws 893, 893, *amended by* Act of May 28, 2003, 78th Leg., R.S., ch. 500, § 1, 2003 Tex. Gen Laws 1771, 1771, *amended by* Act of May 18, 2007, 80th Leg., R.S., ch. 306, § 1, 2007 Tex. Gen. Laws 582, 582 (amended 2015) (current version at TEX. PENAL CODE § 21.15(b)(1)). The Court of Criminal Appeals held section 21.15(b)(1) violated the First Amendment because it was not narrowly tailored to address compelling privacy interests and was substantially overbroad because it applied broadly to any nonconsensual photography or visual recording, including that which was purely public, so long as the actor had the requisite sexual intent. 442 S.W.3d at 348-51.

not less than 180 days and not more than two years and a fine of up to $10,000. TEX. PENAL CODE §§ 12.35, 21.15(c).

The indictments charge that Metzger, with the intent to invade the privacy of N.M. and without N.M.'s consent:

- transmitted by electronic means a visual image of an intimate area of N.M. and N.M. had reasonable expectation of privacy that the intimate area was not subject to public view, in violation of section 21.15(b)(1); (four counts);

- photographed an intimate area of N.M. and N.M. had reasonable expectation the intimate area was not subject to public view, in violation of 21.15(b)(1); (one count); and

- photographed N.M. in a bathroom or changing room, in violation of section 21.15(b)(2); (2 counts).

Metzger filed pretrial applications for writs of habeas corpus in each case, seeking to dismiss the indictments on the ground the provisions of section 21.15(b)(1) and (2) under which he was charged violate the First Amendment and are unconstitutionally overbroad. After the trial court denied relief, Metzger filed these appeals. In three issues, he contends the restriction on transmission of images in section 21.15(b)(1) and the restriction on photography in sections 21.15(b)(1) and (b)(2) are unconstitutionally overbroad restrictions on speech that facially violate the First Amendment to the United States Constitution.

### STANDARD OF REVIEW AND FIRST AMENDMENT REVIEW

A defendant may file a pretrial habeas challenge to the facial constitutionality of a statute that defines the offense charged. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). A party may bring a facial challenge to a statute pursuant to the First Amendment doctrine of substantial overbreadth without a showing the statute is unconstitutionally applied to him. *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989); *State v. Johnson*, 475 S.W.3d 860, 864-65 (Tex. Crim. App. 2015) (stating that "under the First Amendment's 'overbreadth' doctrine, a law

may be declared unconstitutional on its face, even if it may have some legitimate application and even if the parties before the court were not engaged in activity protected by the First Amendment"). "The doctrine is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions." *Oakes*, 491 U.S. at 581. We review *de novo* the trial court's determination of whether the statute is facially unconstitutional. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2010).

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *U.S. v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002)). However, there are some "well-defined and narrowly limited classes of speech" that have been recognized as falling outside the protection of the First Amendment. *Stevens*, 559 U.S. at 468-72. These include child pornography, obscenity, defamation, fighting words, incitement, true threats of violence, fraud, and speech integral to criminal conduct. *See id.* Speech not within one of these narrowly defined categories is protected under the First Amendment, even if a legislature "concludes certain speech is too harmful to be tolerated." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 791 (2011).

A statute that seeks to restrict or punish protected speech based on its content is presumptively invalid. *Stevens*, 559 U.S. at 468; *Lo*, 424 S.W.3d at 15. The State bears the burden to rebut that presumption by demonstrating that the statute passes strict scrutiny. *Brown*, 564 U.S. at 799; *Stevens*, 559 U.S. at 468. To pass strict scrutiny, the State must demonstrate the statute is justified by a compelling state interest and is narrowly tailored, using the least restrictive means necessary to achieve its asserted interest. *Brown*, 564 U.S. at 799; *Thompson*, 442 S.W.3d at 344; *see U.S. v. Alvarez*, 567 U.S. 709, 725-26 (2012) (plurality op.) ("There must be a direct causal

link between the restriction imposed and the injury to be prevented"). If the statute still reaches a "real" and "substantial" amount of protected speech, "judged in relation to the statute's plainly legitimate sweep," the statute is unconstitutionally overbroad. *Stevens*, 559 U.S. at 473; *Lo*, 424 S.W.3d at 10.

## DISCUSSION

### A. Section 21.15 regulates protected speech

Metzger challenges parts of section 21.15 that impose criminal penalties on photography and transmission of visual images. As a general matter, both the creation and dissemination of visual images are protected expression under the First Amendment. *See Brown*, 564 U.S. 786 (holding law that imposed civil fines for the sale or rental of violent video games to minors impermissibly restricted protected speech); *Stevens*, 559 U.S. 460 (holding statute criminalizing the knowing creation, selling, or possession of certain depictions of animal cruelty with intent to place it in commerce for commercial gain punished protected speech); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (holding statutory prohibition on possessing or distributing "virtual child pornography," non-obscene sexually explicit images that appear to depict minors but which were produced using youthful adults or computer imaging technology, violated First Amendment); *Thompson*, 442 S.W.3d at 336-37 (holding that photographs and visual recordings, as well as the purposeful creation of them, are inherently expressive and are protected by the First Amendment). Although some visual images restricted by section 21.15 are unprotected because they are obscene or constitute child pornography, the reach of section 21.15 is indisputably far broader and reaches photographs and visual images not within any of the recognized categories of unprotected speech.

The State argues the expressive activity regulated by section 21.15 "is removed from the ambit of First Amendment protection" because the statute only restricts photography and visual recordings intended to invade the "substantial privacy interests" of another "in an essentially

intolerable manner." Alternatively, the State asserts that speech intended to invade substantial privacy rights should be categorically unprotected by the First Amendment. We disagree with both propositions.

The State's argument that the photography and transmissions restricted by section 21.15 are not protected by the First Amendment appears to be based upon a line of United States Supreme Court cases upholding restrictions on protected speech under the "captive audience doctrine." The doctrine has been applied "only sparingly to protect unwilling listeners from protected speech" and then, only upon "a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Snyder v. Phelps*, 562 U.S. 443, 459 (2011) (quoting *Cohen v. California*, 403 U.S. 15, 21 (1971)); *see, e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 489 (1988) (holding ordinance that prohibited picketing focused on and taking place at a particular residence was content neutral, served State's interest in protecting tranquility and privacy of the home, and survived intermediate scrutiny); *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970) (upholding statute that allowed householders to request postal service remove them from certain mass mailing lists, and concluding householder's right not to be captive to unwanted and objectionable speech in his own home prevailed over mass mailer's First Amendment right to communicate). These cases do not support that there is a categorical exception for speech that "invades the substantial privacy interests of another in an essentially intolerable manner;" rather, they hold that *in limited circumstances*, the State's interest in protecting specific individual privacy interests is sufficiently compelling that narrow restrictions on First Amendment freedoms may be justified.

The captive audience cases did not create a categorical exception to First Amendment protection, and the Supreme Court has not otherwise held that speech or expressive activity that "invades substantial privacy interests of another in an essentially intolerable manner" is "removed from the ambit of First Amendment protection." To the contrary, the Court recognizes that both

freedom of speech under the First Amendment and individual privacy rights are "plainly rooted in the traditions and significant concerns of our society." *The Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989). Because of "the sensitivity and significance of the interests presented in clashes between First Amendment and privacy rights," the Supreme Court has consistently relied "on limited principles that sweep no more broadly than the appropriate context of" the case before it. *Id.* Thus, in *Florida Star*, the Court held the First Amendment precluded civil liability against a newspaper for publishing the name of a sexual assault victim, even though the publication violated both the paper's own policy and state law, but the Court declined "to hold broadly that truthful publication may never be punished consistent with the First Amendment." *Id.* at 532.

In *Bartnicki v. Vopper*, 532 U.S. 514 (2001), the Supreme Court again addressed the "clash" between the First Amendment and privacy rights in a challenge to the federal wiretapping law, which contained civil and criminal penalties for intentionally disclosing the contents of an illegally intercepted communication. The defendants were sued after they intentionally and repeatedly disclosed in a radio broadcast the contents of an illegally intercepted cell phone conversation. The defendants did not participate in the illegal interception, but they knew or had reason to know the interception was unlawful. 532 U.S. 517-18. The Court held the information disclosed concerned a matter of public interest and that neither the state's interest in protecting the privacy of its citizens nor its interest in deterring the unlawful interception of communications justified punishing the truthful publication of the lawfully obtained information. *Id.* at 529-35. Although the Court stated that "[a]s a general matter, state action to punish the publication of truthful information seldom can satisfy constitutional standards," it again "refused to answer categorically whether truthful publication may ever be punished consistent with the First Amendment" because of "the sensitivity and significance of the interests presented in clashes between First Amendment and privacy rights." *Id.* at 527, 529 (internal quotation marks omitted).

The Court also declined to decide whether the state's interest in protecting privacy would be strong enough to justify applying the statute if the disclosure concerned purely private information. *Id.* at 533.

In *Snyder v. Phelps*, a jury found the defendants intentionally invaded the plaintiffs' privacy by intruding upon their seclusion and inflicted emotional distress by picketing at plaintiffs' son's funeral. 562 U.S. 443, 450 (2011). The jury awarded $2.9 million in compensatory damages and $8 million in punitive damages for speech that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 465 (Alito, J., dissenting) (internal quotation marks omitted). Even though a jury had found the speech and expressive activity had been an intentional and highly offensive invasion of privacy, the Court noted it did not fall within one of the categorical exclusions from First Amendment protection. *Id.* at 450 n.3. Concluding the defendants were picketing in a place they had a right to be and about a matter of public concern, the Court held the First Amendment barred the recovery for intentional invasion of privacy and intentional infliction of emotional distress. 562 U.S. at 456-60. The Court recognized the First Amendment protection may be "less rigorous" in a case where the speech concerned purely private matters.[2] *Id.* at 452. However, the Court has not decided the boundaries of First Amendment protection of purely private truthful speech in the context of claims of invasion of privacy and intentional infliction of emotional distress. *See id.* at 461-62 (Breyer, J., concurring); *id.* at 464-65 (Alito, J., dissenting).

---

[2] Although analysis of some restrictions on purely private speech may be less rigorous, the Court "in no sense suggest[s] that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction." *Connick v. Myers*, 461 U.S. 138, 147 (1983) (discussing restriction of public employee's speech regarding matters not of public concern).

The United States Supreme Court has never held that truthful expression that invades privacy "in an intolerable manner" categorically loses its First Amendment protection or that intent to invade privacy converts protected expression into unprotected conduct. We therefore reject the State's argument that by including an element of intent to invade privacy in section 21.15 and by purportedly limiting the statute's application to "highly offensive" and "intolerable" invasions of "substantial" privacy interests, the legislature removed the creation of the visual images proscribed by the statute "from the ambit of" the First Amendment. *See Ex parte Hamilton*, 599 S.W.3d 312, 317 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (rejecting State's argument that intent-to-invade-privacy element in section 21.15(b) resulted in statute that regulates conduct that is not subject to First Amendment protection or scrutiny).

We also decline the State's invitation to recognize a new category of unprotected speech. The "guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it." *Stevens*, 559 U.S. at 470. "[N]ew categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated." *Brown*, 564 U.S. at 791. And this court lacks "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Stevens*, 559 U.S. at 472; *see also Ex parte Thompson*, 442 S.W.3d at 344 (noting that the categories of speech that are exempt from First Amendment protection are limited and heeding Supreme Court's admonition against creation of new categories); *State v. Van Buren*, 214 A.3d 791, 802 (Vt. 2019) (refusing "to identify a new categorical exclusion from the full protections of the First Amendment" for "extreme invasions of privacy" such as nonconsensual pornography).

**B. Section 21.15 is a content-based restriction**

Because section 21.15 regulates expressive conduct protected by the First Amendment, we must next determine whether the statutory restrictions are content-based. A law is content-based if it "targets speech based on its communicative content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A law is content-based if the "regulation of speech 'on its face' draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.* at 163-64 (internal citation omitted). Also subject to strict scrutiny are regulations that, although facially content neutral, cannot be justified without reference to the content of the speech." *Id.* at 164. "If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, the regulation is content-based." *Lo*, 424 S.W.3d at 15 n.12.

A person who photographs or transmits a visual image without consent and with the intent to invade privacy violates section 21.15(b)(1) only if the image is of another person's "intimate area," defined as "naked or clothed genitals, pubic area, anus, buttocks, or female breast." TEX. PENAL CODE § 21.15(a)(1), (2), (b)(1). It does not apply to nonconsensual images that include only feet, hands, necks, or faces, even if the person had a reasonable expectation they were not subject to public view (*i.e.*, the subject of the image was inside their home). Limiting the prohibition in section 21.15(b)(1) to only images that include "intimate areas" is a content-based restriction, even if the intent element of the offense is not considered. *See Hamilton*, 599 S.W.3d at 317-18 (holding the sexually-related nature and subject matter of the images proscribed by section 21.15(b)(1) renders the statute content-based).

Subsection (b)(2) prohibits only the creation of certain visual images of "another" in a changing room or bathroom. TEX. PENAL CODE § 21.15(b)(2). The State assumes, but does not concede, the prohibition is content-based. Metzger argues it is content-based because it only applies to visual images of people, but not to images of a cat or a flower, and to determine whether the statute is violated, one must look at the content of the speech. *See Lo*, 424 S.W.3d at 15 n.12. However, in its review of the previous version of section 21.15(b)(1), the Court of Criminal Appeals stated the "inquiry … is not that simple." *Thompson*, 442 S.W.3d at 346. Former section 21.15(b)(1) prohibited the nonconsensual creation of a *"visual image of another at a location that is not a bathroom or private dressing room"* if done "with intent to arouse or gratify the sexual desire of any person."[3] The Court of Criminal Appeals stated the discrimination in the statute was not between people and animals or inanimate objects; rather the statute distinguished permissible photography from prohibited photography "on the basis of the non-consensual nature of the defendant's activity, and that basis, *by itself*, is a content-neutral distinction." *Id.* at 346-47. The court nevertheless concluded the section was content-based because it punished only "a subset of non-consensual image and video producing activity—that which is done with the intent to arouse or gratify sexual desire." *Id.* at 347-48. The court concluded the culpable mental state caused the statute to be content-based. *Id.* In reaching its conclusion, the court relied on several cases, including *Texas v. Johnson*, 491 U.S. 397, 411-12 (1989). *Johnson* held the Texas flag-burning statute was content-based because whether the law was violated depended on the communicative impact of the expressive conduct; the statute only punished mistreatment of the flag that was done with the intent to seriously offend other people. 491 U.S. 411-12 & n.7; *see Thompson*, 442 S.W.3d at 347-48. We hold the culpable mental state in section 21.15(b)(2) likewise causes the statute to

---

[3] *See* n. 1, *supra*.

be content-based. That section does not punish all nonconsensual photography or video recording activity in a bathroom or changing room, only that done with the intent to invade the other person's privacy. As discussed below, activity engaged in with the intent to invade another's privacy is by definition activity intended to be highly offensive to a reasonable person of ordinary sensibilities. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). Under the reasoning of the courts in *Johnson* and *Thompson*, section 21.15(b) is content-based because whether the law has been violated depends on the communicative impact of the expressive activity.

## C. Strict scrutiny

Because section 21.15 is a content-based restriction on protected speech, it is subject to strict scrutiny review.[4] *Brown*, 564 U.S. at 799; *Thompson*, 442 S.W.3d at 348. "Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid, and that the Government bear the burden of showing their constitutionality." *Ashcroft v. ACLU*, 542 U.S. at 660 (internal citation omitted) (stating "[t]his is true even when Congress twice has attempted to find a constitutional means to restrict, and punish, the speech in question," and upholding injunction against enforcement of statute that imposed criminal penalties for knowingly posting materials harmful to minors). To satisfy strict scrutiny, content-based laws that regulate expression "are presumptively unconstitutional and may be justified only if the government proves that they are

---

[4] Several of our sister courts have held Penal Code sections 21.15(b)(1) and (b)(2), as amended in 2015, survive strict scrutiny and are not unconstitutional. *See Hamilton*, 599 S.W.3d 312 (§ 21.15(b)(1)); *Ex parte Nuñez*, No. 11-18-00156-CR, 2019 WL 2062699 (Tex. App.—Eastland May 9, 2019, pet. ref'd) (mem. op., not designated for publication) (§ 21.15(b)(2)); *Matter of D.Y.*, No. 02-16-00294-CV, 2017 WL 2178877 (Tex. App.—Fort Worth May 18, 2017, pet. denied) (mem. op.) (§ 21.15(b)(2)).

narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 155. *See, e.g., Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (plurality opinion) (upholding judicial canon that prohibited personal solicitation of campaign funds; four justices concluded the canon survived strict scrutiny because it was narrowly tailored to serve compelling state interest; a fifth justice would reach the same result by applying intermediate scrutiny). If the State has a compelling interest and has narrowly tailored its statute, the statute will be invalidated for overbreadth only if the challenger can show the statute continues to reach a real and substantial amount of protected speech, "judged in relation to its legitimate sweep." *New York v. Ferber*, 458 U.S. 747, 769 (1982).

Before further analysis, we address Metzger's assertion that the statute is inherently unconstitutional and no further scrutiny is required. Metzger contends the statute restricts a real and substantial amount of protected speech because the only unprotected speech within its scope are obscene images and images of child pornography. He asserts the statute is therefore necessarily unconstitutionally overbroad. He does not argue the State has failed to show a compelling interest or that section 21.15 is not narrowly tailored, asserting such arguments are unnecessary. Instead, he argues that because the vast majority of images within the scope of the statute are protected, "the court does not consider whether there is a governmental interest in restricting the speech," "the inquiry ends," and the "restriction is void." We disagree. A content-based restriction on expression is only presumptively invalid. *See id.* The State may "regulate the content of *constitutionally protected speech* in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126, (1989) (emphasis added). If the State meets its burden, the statute is unconstitutionally overbroad only if it reaches far more protected speech than the State has a compelling interest in restricting. We also disagree with Metzger that *Stevens* supports his position. In *Stevens*, the Court concluded the criminal statute banning depictions of animal cruelty applied

to far more protected expressive activity than that which the government asserted it had a compelling interest in restricting (its allegedly "legitimate sweep"). 559 U.S. at 481. The Court therefore held the statute was unconstitutionally overbroad without it needing to decide whether the asserted state interest was sufficiently compelling to justify a more narrow statute. *Id.* at 482.

**1. Statutory construction: What does the statute cover?**

The first step in an overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *United States v. Williams*, 553 U.S. 285, 292-93 (2008); *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016). Section 21.15, in its entirety, provides:

(a) In this section:

(1) "Female breast" means any portion of the female breast below the top of the areola.

(2) "Intimate area" means the naked or clothed genitals, pubic area, anus, buttocks, or female breast of a person.

(3) "Changing room" means a room or portioned area provided for or primarily used for the changing of clothing and includes dressing rooms, locker rooms, and swimwear changing areas.

(4) "Promote" has the meaning assigned by Section 43.21[5].

(b) A person commits an offense if, without the other person's consent and with intent to invade the privacy of the other person, the person:

(1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of an intimate area of another person if the other person has a reasonable expectation that the intimate area is not subject to public view;

(2) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another in a bathroom or changing room; or

---

[5] Section 43.21 defines "promote" as "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same." TEX. PENAL CODE § 43.21(a)(5).

> (3) knowing the character and content of the photograph, recording, broadcast, or transmission, promotes a photograph, recording, broadcast, or transmission described by Subdivision (1) or (2).
>
> (c) An offense under this section is a state jail felony.
>
> (d) If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section or the other law.
>
> (e) For purposes of Subsection (b)(2), a sign or signs posted indicating that the person is being photographed or that a visual image of the person is being recorded, broadcast, or transmitted is not sufficient to establish the person's consent under that subdivision.

TEX. PENAL CODE § 21.15. In construing the Penal Code, "we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended." *Perry*, 483 S.W.3d at 902. We consider the words in context and construe them according to the rules of grammar and common usage unless a word or phrase has acquired a technical or particular meaning, in which case we construe it accordingly. TEX. GOV'T CODE § 311.011. When the meaning of the statutory language is not plain or leads to absurd results, we may consider extratextual factors such as the circumstances under which the statute was enacted, the legislative history, the common law, and former statutory provisions. *Perry*, 483 S.W.3d at 903.

### a. Photography and transmission under section 21.15(b)(1) and (b)(2)

Metzger challenges the constitutionality of the three means of violating section 21.15 with which he was charged—photographing an intimate area in violation of subsection (b)(1), transmitting a visual image of an intimate area of another person in violation of subsection (b)(1), and photographing another in violation of subsection (b)(2). To properly analyze whether the statute passes strict scrutiny, we must understand exactly what the statute proscribes.

The prohibition on photographing a person is clear, plain, and unambiguous. What constitutes "transmit[ting] a visual image" is less clear. The plain meeting of "transmit" is "[t]o send or transfer (a thing) from one person or place to another." *Transmit*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, it initially appears that the prohibitions in (b)(1) and (b)(2) apply equally to a person who initially photographs or records a prohibited image and to any person who, at some later time, "transmits" by electronically sharing or sending the image. However, when we consider the statute as a whole and the legislative history, we conclude "transmit," as used in section 21.15(b)(1) and (b)(2) has a narrower meaning, and is limited to the original creation of the visual image by means of an electronic transmission.

We reach this conclusion in part by examining the structure of the statute. Subsection (b)(3) specifically targets the dissemination and sharing of previously created images by making it an offense to "promote[] a photograph, recording, broadcast, or transmission described by Subdivision (1) or (2)." TEX. PENAL CODE § 21.15(b)(3). To establish a violation of (b)(3), the State must prove the additional element that the actor who promotes the material did so "knowing the character and content of the photograph, recording, broadcast, or transmission." *Id.* That is, to prove a person committed the offense of promoting a previously created prohibited visual image, the State must prove, at a minimum, that the actor has knowledge the image was created in a bathroom or changing room or has knowledge the image is of another's intimate area and of the circumstances that gave rise to the other person's reasonable expectation of privacy. *See id.* The State is not required to so prove when charging under (b)(1) or (b)(2), presumably because the person charged under those sections necessarily is aware of the nature of the image and the circumstances in which the image was created. If the word "transmit" in (b)(1) and (b)(2) is construed to mean it is an offense to electronically send or share a previously created visual image, then subsection (b)(3) would be superfluous. The State could then prosecute actors who

electronically share prohibited images under (b)(1) or (b)(2) without any showing the actor had knowledge of the content and character or the visual image.

The legislative history of the statute also clarifies that "transmit" as used in subsections (b)(1) and (b)(2) was intended to refer to a method of electronically creating a visual image, not to subsequent electronic sharing or sending of the image. The 2003 version of section 21.15 made it an offense to "photograph[] or by videotape or other electronic means visually record[] another" in proscribed circumstances. Act of May 28, 2003, 78th Leg., R.S., ch. 500, § 1, 2003 Tex. Gen. Laws 1771, 1771 (amended 2007 & 2015). It also provided a person committed an offense if, "knowing the character and content of the photograph or recording," the person "promote[d]" a prohibited photograph or visual recording. *Id.* The legislature made several changes to section 21.15 in 2007, one of which was to add "broadcast" and "transmit" to what are now subsections (b)(1) and (b)(2). Act of May 18, 2007, 80th Leg., R.S., ch. 306, § 1, 2007 Tex. Gen. Laws 582, 582 (amended 2015). The background and purpose of this amendment, as stated in the bill analysis for the House Criminal Jurisprudence Committee was:

> Technology has become quite advanced in recent years, including consumer hand held devices that are able to broadcast or transmit "live feeds" of an image without actually recording the image. For example, cameras on mobile phones can be used to "see" an event as it is happening (like peering through a set of binoculars) without actually capturing the image as a photograph. Likewise other electronic devices allow for "live feeds" of images to be broadcast and transmitted.
>
> Current Texas law provides that it is a criminal offense to photograph, videotape, or by electronic means visually record another person without their consent for the purpose of sexual arousal or gratification of any person. It is also a criminal offense to promote the character and content of such a photograph or visual recording. While Texas law provides for such an offense, it is not an offense to broadcast or transmit such an image via only a "live feed."
>
> House Bill 1804 corrects this loophole by also making it an offense to broadcast or transmit the visual image of another person without their consent . . .

House Crim. Jurisprudence Comm., Bill Analysis, Tex. H.B. 1804, 80th Leg., R.S. (2007). When the legislature again amended the statute in 2015, after *Thompson* held it was unconstitutional, it amended the intent provisions and the statute's applicability in public places, but it did not modify the prohibited manners of creating a visual image listed in (b)(1) and (b)(2). *See* Act of May 30, 2015, 84th Leg., R.S., ch. 955, § 2, 2015 Tex. Gen. Laws 3394, 3394 (codified at TEX. PENAL CODE § 21.15). We conclude that, as used in section 21.15(b)(1) and (b)(2), "transmit" applies only to an actor who by electronic means creates the proscribed visual image.

b. Content and location of prohibited photographs and visual images

The photographs and visual images prohibited by section 21.15(b)(1) are those "of an intimate area of another person if the other person has a reasonable expectation that the intimate area is not subject to public view." TEX. PENAL CODE § 21.15(b)(1). "Intimate areas" means a person's "naked or clothed genitals, pubic area, anus, buttocks, or female breast." *Id.* § 21.15(a)(2). Subsection (b)(1) appears to have several applications. First, it proscribes creating visual images of parts of the body the person reasonably expects are not subject to public view. That is, it applies to photographs and visual images created in any location, public or private, if the image is of an intimate area the person reasonably believed was not subject to public view because, for example, it was covered by outer clothing such as a skirt. Indeed, the opinions we have found reviewing convictions under the 2015 amendments to section 21.15(b)(1) all involve "upskirt" photography or recording. *See Aguilar v. State*, No. 14-18-00321-CR, 2019 WL 3121823 (Tex. App.—Houston [14th Dist.] July 16, 2019, no pet.) (mem. op., not designated for publication) (upskirt video with cell phone in a store); *Ex parte Faust*, No. 09-18-00462, 2019 WL 1549037 (Tex. App.—Beaumont April 10, 2019, no pet.) (mem. op., not designated for publication) (upskirt video recording with cell phone in shopping mall); *Vasquez v. State*, No. 05-16-01122-CR, 2017 WL

1710583 (Tex. App.—Dallas May 3, 2017, no pet.) (mem. op., not designated for publication) (upskirt photography with cell phone in a grocery store).

By its plain language, section 21.15(b)(1) also includes visual images created when the subject of the image is in a place where they have a reasonable expectation their intimate areas are not subject to public view, such as in the person's home, so long as the image includes one or more of their (naked or clothed) intimate areas. A person in their home who is not standing in front of a window with open curtains may reasonably expect that they are not subject to public view. *Cf. Long v. State*, 532 S.W2d 591, 594-95 (Tex. Crim. App. 1975) (holding Fourth Amendment reasonable expectation of privacy does not protect what a person makes visible to public through a window with open curtains or blinds); *Turner v. State*, 499 S.W.2d 182, 183-85 (Tex. Crim. App. 1973) (same). By the plain terms of the statute, an image of that person in their home that includes one of the person's intimate areas, naked or clothed, is within the scope of subsection (b)(1). The statute does not require the proscribed image be sexual in nature.

The location and content of images proscribed by subsection (b)(2) are unambiguous: it applies to any photograph or visual image of another person in one of two inherently private places—a bathroom or changing room.

### c. Nonconsensual

In order to be prohibited by section 21.15(b)(1) or (b)(2), the creation of the visual image must be done "without the other person's consent." "Consent" is defined by the Texas Penal Code to mean "assent in fact, whether express or apparent." TEX. PENAL CODE § 1.07(a)(11). The Penal Code definition has been construed to mean "an actual or real agreement after thoughtful consideration." *Thompson*, 442 S.W.3d at 340-41; *Baird v. State*, 398 S.W.3d 220, 229-30 (Tex. Crim. App. 2013).

### d. Intent to invade privacy

Both subsections (b)(1) and (b)(2) require the actor have taken the photograph or transmitted the visual image with the intent to invade the privacy of the other person. Neither "intent to invade the privacy" of a person nor "invasion of privacy" are defined in the Texas Penal Code or in any other Texas statute. However, the phrase has acquired a technical or particular meaning in Texas common law. *See* TEX. GOV'T CODE § 311.011.

A right to personal privacy has long been part of the common law, and since 1973, Texas has recognized that an unwarranted invasion of the right of privacy constitutes a legal injury. *Billings v. Atkinson*, 489 S.W.2d 858, 859-60 (Tex. 1973). This right to of privacy incorporates several interests, the invasion of which can give rise to a civil remedy. *Id.* One of those interests—the right to be free from the wrongful intrusion into one's seclusion and private activities—is addressed by subsections 21.15(b)(1) and (b)(2). *See id.* at 859.[6] Under established Texas law, the elements of a claim for invasion of privacy by intrusion are an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs, which would be highly offensive to a reasonable person of ordinary sensibilities. *See id*; *Valenzuela*, 853 S.W.2d at 513. We construe the intent element of subsections (b)(1) and (b)(2) accordingly, to mean the photography or transmission must be done with the intent to intrude upon the other person's seclusion or private affairs in a manner that would be highly offensive to a reasonable person of ordinary sensibilities.

---

[6] Subsection (b)(3), which makes it an offense to promote a photograph or transmission that is prohibited by (b)(1) or (b)(2), addresses another of the privacy interests recognized in *Billings*—the interest in being free from publication "of one's private affairs with which the public has no legitimate concern." *See id.*; *Star-Telegram*, 915 S.W.2d at 474 (elements of invasion of privacy tort for public disclosure of private facts requires proof that "publicity was given to matters concerning one's personal life," "publication would be highly offensive to a reasonable person of ordinary sensibilities," and "the matter publicized is not of legitimate public concern").

**2. The State's compelling interests**

The strict scrutiny analysis requires the state to identify "an actual problem in need of solving," and to show that it is important enough to justify suppressing speech. *See Brown*, 564 U.S. at 799. The State asserts the problem it is seeking to address is the "intolerable" invasion of people's privacy that occurs when they are photographed without their consent in their home, bathroom, or changing room and when visual images are created of their intimate areas without consent and when they have a reasonable expectation their intimate areas are not subject to public view. Appellate opinions in cases under section 21.15 since it was amended in 2015 reflect prosecutions involving these types of activity—upskirt photography, pictures taken with a cell phone in a bathroom or dressing room, a hidden recording device in a dressing room, and a cell phone recording made in the bathroom of a home. *See Hamilton*, 599 S.W.3d at 315 (defendant alleged to have broadcast visual image of complainant's genitals, which complainant had reasonable expectation were not subject to public view); *Aguilar*, 2019 WL 3121823, at *1 (upskirt video with cell phone in a store); *Faust*, 2019 WL 1549037, at *1 (upskirt video recording with cell phone in shopping mall); *Aleman v. State*, No. 13-16-00509-CR, 2018 WL 4016938, at *1-2 (Tex. App.—Corpus Christi Aug. 23, 2018, no pet.) (mem. op., not designated for publication) (miniature recording device used to surreptitiously capture images in store dressing room); *Dee v. State*, No. 06-17-00097-CR, 2017 WL 5473770, at *1 (Tex. App.—Texarkana Nov. 15, 2017, no pet.) (mem. op., not designated for publication) (surreptitious cell phone video of person in bathroom of a home); *D.Y.*, 2017 WL 2178877, at *1 (cell phone used to photograph or record an unconsented visual image of another in a bathroom or dressing room); *Vasquez*, 2017 WL 1710583, at *1-2 (upskirt photography with cell phone in a grocery store).

Privacy rights, no less than First Amendment freedoms, are "plainly rooted in the traditions and significant concerns of our society." *Fla. Star*, 491 U.S. at 533 (quoting *Cox Broad. Corp. v.*

*Cohn*, 420 U.S. 469, 491 (1975)). The "right to be let alone," "is as much a part of personal liberty as the right to be free from physical restraint and the right to possess property." *Star-Telegram*, 915 S.W.2d at 473. As early as 1890, Samuel Warren and Louis Brandeis recognized that "existing law affords a principle which may be invoked to protect the privacy of the individual from invasion by either the too enterprising press, the photographer, or the possessor of any other modern device for recording or reproducing scenes or sounds." Samuel D. Warren & Louis Brandeis, *The Right to Privacy,* 4 Harv. L. Rev. 193, 206 (1890). The right to personal privacy incorporates both a right to seclusion and a right to bodily integrity and sexual privacy. Section 21.15(b)(1) and (b)(2) seek to protect both of these aspects of privacy.

The State has an interest in protecting its citizens' personal privacy and security in the seclusion of their homes where they have a legitimate right to expect to be free from prying eyes and lenses. The United States Supreme Court has recognized that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby*, 487 U.S. at 484 (quoting *Carey v. Brown*, 447 U.S. ,455, 471 (1980)). Texas has long proscribed "peeping Tom" activity by making it a crime to peer into a person's home or hotel room through a window or other opening. *See, e.g.*, Tex. Penal Code §§ 42.01(11) (disorderly conduct); 21.17 (voyeurism). The individual's interest in seclusion and the State's interest in protecting it are no less when the peeping Tom wields a camera or peers remotely by means of a camera or electronic transmission device hidden in the home. "[I]n the privacy of the home, the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder." *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 748 (1978).

The right of privacy also includes rights to bodily integrity and sexual privacy. A person's fundamental interest in bodily integrity and sexual privacy have been recognized as liberty interests that are protected from unwarranted state interference by the Due Process Clause. *See*

*Lawrence v. Texas*, 539 U.S. 558, 564-67, 572 (2003); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). Those interests are invaded by a private actor who creates unconsented visual images of a person in a place such as a changing room or a bathroom where people are vulnerable, expose their bodies, and engage in highly private activities with the reasonable expectation they are not being photographed or recorded. A person's bodily integrity and sexual privacy is also violated when someone inside their home usurps the person's right to choose whether photographs may be taken of their intimate areas. *See Clayton v. Richards*, 47 S.W.3d 149, 155-56 (Tex. App.—Texarkana 2001, pet. denied) (holding unconsented video recording of a person in the privacy of his bedroom, even when done by the other spouse, could be found to be highly offensive to reasonable person and thus a tortious invasion of privacy). These types of "video voyeurism" "violate[] people's sexual privacy by denying their autonomy. It effectively takes dominion over their bodies, intimate activities, and sexual interactions without permission. It hijacks their ability to decide who has access to their body, bedroom, or bathroom. It undermines people's sense that they control their intimate lives." Danielle Keats Citron, *Sexual Privacy*, 128 YALE L.J. 1870, 1909 (2019). Likewise, "up-skirt" and "down-blouse" photographs violate sexual privacy by "undermin[ing] the victim's decision to shield her genitalia and breasts from the public—consent and sexual autonomy are no longer in victims' control." *Id.* at 1914. The State has a legitimate interest in preventing and punishing the "profound" harm caused by these types of assaults on sexual privacy and bodily integrity. *See id.* at 1924-29 and accompanying notes (discussing harm); *see also Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 252 (1891) (stating "[t]he inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow"); *Van Buren*, 214 A.3d at 810-11 (discussing substantial harm caused by non-consensual pornography). We conclude the rights to personal seclusion, bodily integrity, and sexual privacy are substantial rights;

and the state has a compelling interest in protecting those rights from highly offensive or "intolerable" attack.

### 3. The statute is narrowly tailored

To survive strict scrutiny, a law must be narrowly tailored. That means the statute must address the problem the State has a compelling interest in resolving, the curtailment of free speech is "actually necessary to the solution," and the restriction on protected speech is the least restrictive means to serve the compelling interest. *Brown*, 564 U.S. at 799; *Ashcroft*, 542 U.S. 655.

The State contends sections 21.15(b)(1) and (b)(2)[7] are narrowly tailored because 1) they apply only to photographs taken and visual images transmitted in places where the person has a reasonable expectation of privacy or where they have a reasonable expectation their intimate areas are not subject to public view; 2) they do not apply to photographs or transmissions of visual images of people or their intimate areas that are in public view; 3) they apply only if the photograph is taken or the visual image is transmitted without consent; and 4) they apply only if the actor intends to invade the other person's privacy.

We agree the statute narrowly addresses problems the State has a compelling interest in solving and protects compelling privacy interests. Sections 21.15(b)(1) and (b)(2) restrict the protected expressive activity of a person who invades the bodily integrity and sexual privacy of another or who intrudes upon the seclusion of the home by means of unconsented photography or electronic transmission. The statute applies to photography and transmissions created with surreptitiously placed devices in a home, bathroom, or changing room, and to "peeping Toms," who photograph or transmit through cracks in the curtains, a hole in the wall, or from the ground, looking up a person's skirt. The statute also may reach unconsented photographs that contain any

---

[7] Our analysis is limited to photographs and transmissions of live feeds of visual images prohibited by section 21.15(b)(1) and (b)(2).

intimate area of a naked or fully clothed person and were taken by someone, such as a family member or team member, who is rightfully in the home or locker room[8] with the person photographed. However, the state has a compelling interest in restricting and punishing such an actor only if the unconsented photography is an "intolerable" invasion of the other person's bodily privacy. As we have construed the intent-to-invade-privacy element, the statutory restriction is limited to "intolerable" invasions because it reaches only photographs and transmissions that either in the manner of their creation or their subject matter would be considered highly offensive to a reasonable person of ordinary sensibilities.

Section 21.15(b)(1) and (b)(2) of the Texas Penal Code, as we have construed them, reach only invasions of "substantial" privacy interests that occur "in an intolerable manner." *See Thompson*, 442 S.W.3d at 348. We conclude the statutory curtailment of protected photography and transmission of visual images in those sections of the statute is no broader than necessary to prevent the substantial harms the State has a compelling interest in preventing and therefore survives strict scrutiny. *See Sable Commnc'ns*, 492 U.S. at 126 (State may regulate "constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.").

**D. Metzger has not shown the statute is unconstitutionally overbroad**

Because overbreadth is "manifestl[y] strong medicine," it is employed "sparingly, and only as a last resort." *Oakes*, 491 U.S. 581. A statute will be facially invalidated as unconstitutionally overbroad only if it reaches a real and substantial amount of protected expression, "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "The person challenging the statute must demonstrate from its text and from actual fact "that

---

[8] Photographs taken in a locker room or the bathroom of a home are within the scope of the statute even if the image does not contain any "intimate area."

a substantial number of instances exist in which the Law cannot be applied constitutionally." *Johnson*, 475 S.W.3d 865 (quoting *N.Y. State Club Ass'n Inc. v. City of New York*, 487 U.S. 1, 14 (1998).

Metzger has not attempted to establish the statute reaches protected expression beyond that which the state has a compelling interest in prohibiting. Although it is conceivable a photograph or transmission created in violation of section 21.15(b)(1) or (b)(2) could be of such public concern that punishment for its creation would not comport with the First Amendment, "the danger the statute will be unconstitutionally applied must be realistic and not based on fanciful hypotheticals." *Id.* (internal quotation marks and citations omitted). In light of the tensions between privacy interests and the First Amendment, we decline to facially invalidate the statute without a showing by appellant that a real and substantial amount of protected speech beyond the statute's legitimate reach is prohibited or that protected speech is unjustifiably chilled. We do not hold section 21.15(b)(1) and (b)(2) of the Penal Code are constitutional in all their applications. Rather, we hold Metzger has failed to show unconstitutional overbreadth and we "assume that 'whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'" *N.Y. State Club Ass'n*, 487 U.S. at 14 (quoting *Broadrick v. Ok*, 413 U.S. 601, 615-16 (1973)).

## CONCLUSION

In conclusion, we hold section 21.15(b)(1)-(2) of the Texas Penal Code is a content-based restriction on activity protected by the First Amendment to the United States Constitution. However, as we have construed the restrictions on photography and electronic transmissions of visual images in 21.15(b)(1)-(2), the restrictions are narrowly tailored to serve the State's compelling interest in protecting its citizens from highly intrusive and offensive invasions of their substantial privacy rights. Metzger has not shown the challenged part of the statute will reach a

substantial amount of protected speech beyond this legitimate sweep or that it will unjustifiably chill protected activity. We therefore hold Texas Penal Code sections 21.15(b)(1) and (b)(2) are not facially overbroad, and we affirm the trial court's orders.

Luz Elena D. Chapa, Justice

PUBLISH